**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **FEDERAL INSURANCE COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GILBANE, INC., GILBANE PROPERTIES, INC., GILBANE BUILDING COMPANY, PAUL CHOQUETTE, THOMAS F. GILBANE JR., ROBERT V. GILBANE, WILLIAM J. GILBANE, JR. and RICHARD T. GILBANE,**<br><br>**Defendants.** | **Case No.** CA 07 132S |

**COMPLAINT**

Plaintiff Federal Insurance Company ("Federal") complains against defendants Gilbane, Inc. ("Gilbane"), Gilbane Properties, Inc. ("GPI"), Gilbane Building Company ("GBC"), Thomas F. Gilbane Jr., Robert V. Gilbane, William J. Gilbane Jr., Paul Choquette and Richard T. Gilbane (collectively, the "Defendants") and alleges as follows:

**PARTIES**

1. Federal is a corporation organized and incorporated under the laws of the State of Indiana, and has its principal place of business now and at the time this action was commenced in New Jersey.

2. Gilbane is a corporation organized and incorporated under the laws of the State of Rhode Island, and has its principal place of business now and at the time this action was commenced in Rhode Island.

3. GPI is a corporation organized and incorporated under the laws of the State of Rhode Island, and has its principal place of business now and at the time this action was commenced in Rhode Island. Upon information and belief, GPI is a wholly owned subsidiary of Gilbane.

4. GBC is a corporation organized and incorporated under the laws of the State of Rhode Island, and has its principal place of business now and at the time this action was commenced in Rhode Island. Upon information and belief, GBC is a wholly owned subsidiary of Gilbane.

5. Thomas F. Gilbane, Jr. is an individual resident and citizen of the State of Rhode Island.

6. Robert V. Gilbane is an individual resident and citizen of the State of Rhode Island.

7. William J. Gilbane, Jr. is an individual resident and citizen of the State of Rhode Island.

8. Paul Choquette is an individual resident and citizen of the State of Rhode Island.

9. Richard T. Gilbane is an individual resident and citizen of the State of Rhode Island.

**JURISDICTION AND VENUE**

8. The Court has jurisdiction pursuant to § 1332 of Title 28, U.S. Code, in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

9. Venue is properly laid in this District pursuant to § 1391(a) of Title 28, U.S. Code, in that the Defendants all reside in this District, and a substantial portion of the events or omissions giving rise to the claim occurred in this District.

**FACTS**

**A. THE POLICIES**

10. Federal issued Executive Portfolio Policy No. 8169-1596 to Gilbane for the Policy Period March 5, 2002 to March 30, 2003 (the "2002 Policy").

11. In connection with the application for the 2002 Policy, Federal required that Gilbane complete a written application, which Gilbane first signed and submitted to Federal on or about January 8, 2002.

12. Among other items, the application contained a "Prior Knowledge" or "Warranty" Question, which stated as follows:

> **It is important that the Applicant fill in the blank in this paragraph**. No person proposed for coverage is aware of any facts or circumstances which he or she has reason to suppose might give rise to a future claim that would fall within the scope of any of the proposed coverages for which the **Applicant** does not currently maintain insurance, or within such large limits of liability, except:

13. The Warranty Question further states that "[t]he **Applicant** understands and agrees that if any such facts or circumstances exist, whether or not disclosed, any claim or action arising from them is excluded under any policy issued by the **Company**" (the "Warranty Exclusion").

14. Although the Warranty Question clearly stated (in bold print) that it was "**important that the Applicant fill in the blank**," Gilbane provided no response at all to that question on the application that it submitted on January 8, 2002.

15. After receiving the application, Federal sent a letter to Gilbane's insurance broker, Aon Risk Services, Inc. ("Aon") dated February 13, 2002. That letter addressed certain matters pertaining to the potential issuance of the 2002 Policy and advised, among other things, that "[p]rior to binding, this proposal is subject to the underwriter's receipt and satisfactory review" of an "[u]pdated Warranty."

16. In a letter dated March 11, 2002, Federal once again advised Gilbane (through its broker, Aon), that "[p]rior to binding, this proposal is subject to the underwriter's receipt and satisfactory review" of an "[u]pdated Warranty."

17. On or about after March 15, 2002, Federal finally received the "updated warranty" that it had requested. In particular, Federal received a second application, signed by Gilbane's Chief Financial Officer Ken Adelman and dated March 12, 2002. In response to the (previously unanswered) Warranty Question, Gilbane answered "None," thus indicating that, as of March 12, 2002, neither it nor any "person proposed for coverage is aware of any facts or

circumstances which he or she has reason to suppose might give rise to a future claim that would fall within the scope of any of the proposed coverages . . ."

18. In addition, in a letter dated March 15, 2002 that accompanied the application, Mr. Alderman stated "that there have been no known losses since the original date of this application which is 1/8/02."

19. In reliance upon the information submitted in the application materials, Federal issued the 2002 Policy to Gilbane on March 19, 2002. As is typical with liability insurance policies, the 2002 Policy consisted of pre-printed forms setting forth the terms and conditions of coverage, as well as "endorsements" that amended or added to the terms in the pre-printed forms, and "declarations" that set forth certain information specific to the policy involved, such as the name of the insured, the term of coverage, the limit of liability and the deductible.

20. The Insuring Clauses of the 2002 Policy provided that Federal would "pay on behalf of the **Insured Persons** all **Loss**" on account of any "**Claim** first made against him, individually or otherwise, during the **Policy Period**. . . ." and would also "pay on behalf any **Insured Organization** all **Loss**" on account of any "**Claim** first made against the **Insured Organization** during the **Policy Period**. . ."

21. The term "**Claim**" was defined to include any "written demand for monetary damages" as well as any "civil proceeding commenced by the service of a complaint or similar pleading." The Policy also further provided that "all **Loss** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of any **Insured Person** shall be deemed one **Loss**, and such **Loss** shall be deemed to have originated in the earliest **Policy Period** in which a **Claim** is first made against any **Insured Person** alleging such **Wrongful Act** or **Interrelated Wrongful Acts**." The term **Interrelated Wrongful Acts** was in turn defined to mean "all causally connected **Wrongful Acts**."

22. The term "**Insured Person**" was defined to include past, present or future directors or officers of any "**Insured Organization**," and the term "**Insured Organization**" was defined to mean "Gilbane, Inc. and its Subsidiaries."

23. The definition of "**Insured Organization**" was not part of the pre-printed forms setting forth the terms and conditions of coverage. Rather, it was set forth on the Declarations page.

24. The identification of Gilbane's subsidiaries as "**Insured Organizations**" was a particularly important aspect of the coverage provided by the 2002 Policy. Gilbane is merely a holding company, and has no independent operations of its own. Instead, it is Gilbane's subsidiaries that conduct all significant business operations for the Gilbane family of companies, and therefore it is the subsidiaries – and the directors, officers, employees and other agents of those companies – that would most engage in the conduct that would most likely give rise to "**Claims**" under the Policy. Two subsidiaries of Gilbane during the relevant time period are GPI and the GBC.

25. As a condition of coverage under the 2002 Policy, the **Insureds** were required to cooperate with Federal in the defense and investigation of **Claims**. In particular, Section 11 of the 2002 Policy provided that Federal had the right to effectively associate with the **Insureds** in the defense, settlement and investigation of any **Claim,** and also required the **Insureds** to provide Federal with the information, assistance and cooperation that Federal reasonably requests.

26. The 2002 Policy also contained certain exclusions of coverage. Among other exclusions in the Policy, Section 5(c) of the 2002 Policy excluded coverage for all "**Loss**" on account of any "**Claim** . . . "brought or maintained by or on behalf of any **Insured**. . ."

27. Federal subsequently issued a renewal policy to Gilbane for the Policy Period of March 5, 2003 to March 5, 2004 (the "2003 Policy").

28. The material terms of the 2003 Policy, including the definition of the term "**Insured Organization**" as Gilbane and its subsidiaries, were the same as the 2002 Policy.

29. Federal issued another renewal policy to Gilbane for the Policy Period of March 5, 2004 to June 30, 2005 (the "2004 Policy").

30. The Insuring Clause of the 2004 Policy was essentially identical to that in the 2002 and 2003 Policies.

31. Section 16 of the 2004 Policy (like Section 11 of the previous policies) gave Federal the right to effectively associate with the **Insureds** in the defense, settlement and investigation of any **Claim,** and also required the **Insureds** to provide Federal with the information, assistance and cooperation that Federal reasonably requests.

32. Section 6(c) of the 2004 Policy (like Section 5(c) of the previous policies) excluded coverage for **Loss** on account of any **Claim** "brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to . . . . a **Claim** brought by an **Insured Person** who has not served in any **Insured Capacity** for at least four (4) years prior to the date such **Claim** is first made."

33. As set forth on the Declarations page, the 2004 Policy defined the term "**Organization**" as "Gilbane, Inc.," not "Gilbane Inc. and its Subsidiaries" (as had been provided in the 2002 and 2003 Policies).

34. The omission of the Gilbane subsidiaries from the definition of the term "**Organization**" was a mere clerical or scrivener's error in the drafting of the 2004 Policy.

35. Both Gilbane and Federal intended the term "**Organization**" in the 2004 Policy to include Gilbane's subsidiaries, just as the term "**Insured Organization**" in the 2002 and 2003 Policies was defined to include "Gilbane Inc. and its Subsidiaries." Gilbane itself is just a holding company; all significant operations are conducted by Gilbane's subsidiaries, and Gilbane's subsidiaries (and directors, officers or other agents of those subsidiaries) are therefore more likely to engage in the kind of activities that might result in a "**Claim**" under the Policy.

36. Moreover, in connection with issuance of the 2004 Policy, Federal requested, and Gilbane submitted, financial statements for its subsidiary GBC, which Federal reviewed and analyzed before issuing the 2004 Policy.

37. Had the parties intended to insure only Gilbane, but none of its subsidiaries, in the 2004 Policy, the premium for that Policy would have been less than the premium for the prior

policies, which insured all of those entities. However, the premium for the 2004 Policy was higher than the earlier policies.

**B. The Underlying Action**

38. Richard Gilbane is the largest shareholder of Gilbane, and in fact was a director of Gilbane until January 6, 1998 and then a director of GBC through February 2002.

39. A letter dated March 11, 2002 from Richard Gilbane's attorney to Paul Choquette, Jr., the Chairman and CEO of Gilbane, alleged that "for the past few years, [Richard Gilbane] has attempted to reach an understanding with you and other senior Gilbane officials over exclusionary conduct that, quite frankly, if true, is clearly oppressive." The March 2002 letter described various instances of such unfair and exclusionary conduct, including: (a) self-dealing and diversions by senior management of corporate opportunities; (b) undervaluing of corporate assets in connection with actual and contemplated share repurchases; (c) a refusal to declare or pay or underpayment of dividends; (d) excessive management bonuses; and (e) a concerted effort to eliminate shareholders not working at Gilbane from share ownership. The letter then stated that "in light of the foregoing" Richard Gilbane would tender his shares to Gilbane pursuant to a "fair valuation process" outlined in that letter.

40. The parties were unable to agree to a "fair valuation process." One month later, in letter from Richard Gilbane's attorney dated April 11, 2002, Richard Gilbane demanded full audited financial statements of Gilbane and its subsidiaries. According to the letter, the purpose of this "demand" was "to evaluate the current financial condition of Gilbane, Inc. and its subsidiaries and to determine whether officers of the company have (i) misappropriated corporate funds or other corporate opportunities, (ii) breached fiduciary duties or (iii) engaged in improper or inappropriate accounting practices."

41. Gilbane responded to the April 2002 demand by filing a lawsuit against Richard Gilbane on or about April 23, 2002 (the "2002 Action"). The Complaint seeks a protective order barring Richard Gilbane from inspecting the Company's books and records, and a declaratory judgment that Mr. Gilbane was not entitled to such an inspection.

42. On July 22, 2002, Richard Gilbane filed an Answer and Counterclaim to the Complaint. The two count Counterclaim (the "2002 Counterclaim") alleges that the Company's refusal to allow Gilbane access to corporate records (a) breached the Company's bylaws and (b) violated Rhode Island General Law § 7-1.1-46. Among other forms of relief, the Counterclaim seeks statutory penalties under section 7-1.1-46 in an amount equal to ten percent (10%) of the value of Richard Gilbane's shares. The 2002 Action is still pending at this time.

43. By letter dated September 21, 2004, Richard Gilbane made another demand upon the Gilbane and Board of Directors, this time to institute legal proceedings to recover the net death benefit proceeds of $3,350,202.11 plus interest that was paid to directors Thomas F. Gilbane, Robert V. Gilbane and William J. ("James") Gilbane from a Split Dollar Insurance Policy on the life of Jean Gilbane. Like the earlier March 2002 letter, the September 2004 letter alleged a concerted effort to eliminate shareholders not working at Gilbane from share ownership.

44. In particular, the September 2004 letter asserted that Thomas F. Gilbane, Robert V. Gilbane and James Gilbane were part of a "management shareholder group," and that the life insurance policy proceeds were to be used by the management shareholders to purchase the "non-working shareholder's stock." It further alleged that the life insurance policy was part of an "illicit" management shareholder group plan to eliminate the non-management group shareholders from the ownership of the company. The September 2004 letter claimed that, in approving the use of corporate funds to purchase the policy, and in receiving the net death benefit proceeds, Thomas F. Gilbane, Robert V. Gilbane and James Gilbane violated their fiduciary duties to the company and the shareholders.

45. The Gilbane Board of Directors formally declined to take the action requested in the September 2004 letter. Rather, Gilbane and the management group shareholders entered into a tolling agreement with Richard Gilbane at around that time.

46. On December 2, 2004, Federal first received written notice of the September 2004 letter. Prior to that date, Federal had received no notice of any kind with respect to any of the claims asserted by Richard Gilbane against the Company and its directors and officers.

47. In a letter dated December 3, 2004, Richard Gilbane, through his counsel, outlined several additional complaints that he had against the company and its directors. The letter referenced the tolling agreement as well as the "PENDING LAWSUIT" [sic] that Richard Gilbane would file. The December 2004 letter also references a number of concerns regarding director "misconduct," many of which had previously been alleged in the March 2002 letter, including allegations regarding the failure to declare "reasonable and adequate dividends for at least the last ten years," excessive executive compensation and improper "distributions from GPI [Gilbane Property, Inc.] to Robert Gilbane." The December 2004 letter also refers to the life insurance policy allegations that were made in the September 2004 letter.

48. The December 2004 letter was sent to Paul Choquette on or shortly after December 3, 2004, and the issues raised in the letter were discussed in a December 16, 2004 meeting between Richard Gilbane and his counsel and the Gilbane Board of Directors, including Choquette and Thomas Gilbane. However, the parties were unable to resolve their differences, and agreed to treat the December 16, 2004 meeting as a demand for the purposes of Rhode Island Superior Court Rule Civil Procedure 23.1.

49. Richard Gilbane then filed suit against Gilbane Inc, GPI, Paul Choquette, Thomas F. Gilbane, Robert V. Gilbane and William Gilbane (collectively, Paul Choquette, Thomas F. Gilbane, Robert V. Gilbane and William Gilbane hereinafter the "Director Defendants") in Rhode Island Superior Court on February 7, 2005 (the "Underlying Action").

50. The Underlying Action Complaint contained seven counts. Count I was a direct claim against Gilbane and the Director Defendants, and alleges that Gilbane and the Director Defendants breached their fiduciary duties by, among other things, failing to pay reasonable and appropriate dividends for the past ten years. Counts II-IV were based on the allegedly improper life insurance policy "scheme," and alleged derivative claims for breach of fiduciary duty (Count II), usurpation of corporate opportunity (Count III) and unjust enrichment (Count IV). Counts V-VII were based on the allegedly excessive compensation to GPI officer Robert Gilbane and,

like Counts II-IV, alleges derivative claims for breach of fiduciary duty (Count V), usurpation of corporate opportunity (Count VI) and unjust enrichment (Count VII).

**C. THE COVERAGE DISPUTE**

51. Defendants have requested coverage for the Underlying Action under the 2004 Policy.

52. Federal agreed to provide coverage for the **Defense Costs** incurred by the Director Defendants in the Underlying Action, subject to a reservation of rights to limit or deny coverage on any grounds available to it under the 2004 Policy or at law.

53. In particular, among many other grounds, Federal reserved the right to deny coverage pursuant to section 6(c) of the 2004 Policy, which, as noted, excludes coverage for **Loss** on account of any **Claim** "brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to . . . . (iv) a **Claim** brought by an **Insured Person** who has not served in any **Insured Capacity** for at least four (4) years prior to the date such **Claim** is first made."

54. In that regard, Richard Gilbane is an "**Insured Person**" as that term was intended to be defined under the 2004 Policy, because he is a former director of GBC, a Gilbane subsidiary. Furthermore, he was a director of GBC until at least February 2002, which is less than four years prior to the date that the **Claim** for which coverage is sought, the Underlying Action, was "first made." Therefore, because the Underlying Action appeared to be a "**Claim**" that was "brought or maintained on behalf of any **Insured** in any capacity," and because Richard Gilbane was an "**Insured Person**" within four years of the date that the **Claim** was made, Federal reserved its right to deny coverage for the Underlying Action pursuant to Section 6(c) of the 2004 Policy.

55. Defendants have challenged Federal's reservation of rights to deny coverage under Section 6(c) of the 2004 Policy. In particular, Defendants have asserted that Gilbane's subsidiaries are not "**Organization[s]**" as that term is defined by the 2004 Policy, and so

therefore claim that Richard Gilbane's service as a GBC director does not make him an "**Insured Person**" under the 2004 Policy.

56. Federal has advised Gilbane that it disputes its position, and maintains that the parties clearly intended the term "**Organization**" in the 2004 Policy to include GBC and Gilbane's other subsidiaries.

57. By letters dated June 28, 2005 and January 24, 2006, Federal requested from Gilbane and the Director Defendants, among other things, information and documents pertaining to any previous demands by Richard Gilbane containing any allegations similar to those set forth in the March 2002 letter, the September and December 2004 letters, or the Underlying Action itself. Gilbane and the Director Defendants did not provide any of the requested information or documents.

58. By letter dated July 28, 2006, Federal reiterated the request for information made in its previous letters of June 28, 2005 and January 24, 2006, and also requested certain additional information and documents related to the claims and allegations at issue in the Underlying Action, to be provided no later than September 1, 2006. Federal also reminded its Insureds that they were obligated to provide such information under Section 11 of the 2002 Policy and Section 16 of the 2004 Policy, and stated that it was forced to reserve its right to deny coverage in light of their complete failure to provide the requested information and documents to date.

59. In addition, at that time Federal also requested a meeting with Gilbane and the Director Defendants and their respective counsel, in order to discuss the claim and related coverage issues in more detail. In that regard, Federal asked its Insureds that they provide date(s) in the month of September that would be convenient for such a meeting.

60. Gilbane and the Director Defendants did not respond to the July 28, 2006 letter, and provided none of the requested information and documents. Defendants also did not respond to Federal's request for a meeting.

61. Having received no response, Federal reiterated its outstanding request for information in a letter dated September 18, 2006. That September 18 letter also repeated Federal's request for a meeting with Gilbane, the Director Defendants and their counsel.

62. Defendants continued to fail to respond to Federal's request for information.

63. On at least three separate occasions after sending the September 18 letter, Federal contacted Gilbane's General Counsel by phone in order to ascertain whether Gilbane or the Director Defendants had any intention of responding to Federal's repeated requests for information and a meeting. Each time, Gilbane's General Counsel stated that they would be providing the information and documents to Federal within a matter of weeks. However, despite those promises, they still failed to provide the requested information and documents, and also continued to ignore Federal's request for a meeting.

64. On December 22, 2006, Gilbane and the Director Defendants finally responded in writing to Federal's July 28, 2006 letter. However, they failed to answer several of Federal's outstanding requests for information, and also failed to produce a single document. Moreover, despite having previously promised to meet with Federal, and despite having failed to produce any documents themselves, they refused to have a meeting unless Federal agreed to produce confidential documents from its own underwriting files for the Policies.

65. Finally, on March 14, 2007, nearly two years after Federal's first request for information, Gilbane representatives sat down for a meeting with Federal. However, Gilbane and the Director Defendants refused to produce any documentation prior to the meeting as requested. Further, although Gilbane's coverage counsel indicated that he would provide a written response to the information request in Federal's June 28, 2006 letter within two weeks of the meeting – even if only to identify what information would be provided and what would not – Federal has received no such information as of this date.

66. Gilbane and the Director Defendants' failure to provide any of the requested information and documents, and their refusal to meet with Federal for over a year after that

request was first made, has materially prejudiced Federal's ability to investigate and defend the **Claim**.

## COUNT I

**(Reformation—Mutual Mistake – All Defendants)**

67. Plaintiff Federal re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

68. A justiciable controversy exists between Federal on the one hand and the Defendants on the other concerning the scope of coverage under the 2004 Policy and consequently coverage for the Underlying Action.

69. Entry of a declaratory judgment is necessary and appropriate to avoid the risks and uncertainty arising out of the above-described controversy.

70. At the time of contracting, Federal and Gilbane mutually understood and agreed that the term "**Organization**" under the 2004 Policy would include Gilbane's subsidiaries.

71. As set forth above, the omission of Gilbane's subsidiaries from the definition of the term "**Organization**" was due to a simple scrivener's error in the creation of the Declarations page for the 2004 Policy.

72. It is evident that the parties intended for the term "**Organization**" to include Gilbane's subsidiaries because, among many other reasons: (a) the 2002 and 2003 Policies had defined the term "**Insured Organization**" to include "Gilbane, Inc. and its Subsidiaries"; (b) the premium for the 2004 Policy actually was not less (and was actually higher) than the premium for the 2003 Policy; (c) Gilbane submitted financial statements and other information pertaining to its subsidiaries, including GBC, in connection with the application for the 2004 Policy; and (d) Gilbane itself is merely a holding company, with no significant business operations of its own, and therefore it is the subsidiaries, and the officers, directors and other agents of those subsidiaries, that would engage in the kind of conduct that would be most likely give rise to "**Claims**" under the Policy.

73. Thus, the omission of the Gilbane subsidiaries from the definition of the term "**Organization**" under the 2004 Policy was a mutual mistake, because the 2004 Policy does not reflect the parties' prior contemplated understanding of that term.

74. Therefore, Federal is entitled to a judgment equitably reforming the definition of the term "**Organization**" in the 2004 Policy to include "Gilbane, Inc. and its Subsidiaries" as of the date of inception of that Policy and through its entire **Policy Period**.

**COUNT II**

**(Declaratory Judgment – Exclusion 6(c) – All Defendants)**

74. Plaintiff Federal re-alleges and incorporates the foregoing paragraphs, as though fully set forth herein.

75. A justiciable controversy exists between Federal on the one hand and the Defendants on the other concerning the scope of coverage for the Underlying Action.

76. Entry of a declaratory judgment is necessary and appropriate to avoid the risks and uncertainty arising out of the above-described controversy.

77. Federal is entitled to a declaratory judgment that it has no obligation to provide coverage for the Underlying Action, because coverage is barred by Section 6(c) of the 2004 Policy.

78. Section 6(c) of the 2004 Policy excludes coverage for any "**Loss**" on account of any "**Claim**" that is "brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to . . . . a **Claim** brought by an **Insured Person** who has not served in any **Insured Capacity** for at least four (4) years prior to the date such **Claim** is first made.

79. The 2004 Policy defined the term "**Insured Person**" to include directors and officers of any "**Organization**." Furthermore, as set forth above in Count I, the definition of the term "**Organization**" in the 2004 Policy should be reformed to include Gilbane's subsidiaries, to reflect the parties' mutual intent at the time of contracting.

80. The plaintiff in the Underlying Action, Richard Gilbane, is an "**Insured Person**" within the meaning of the 2004 Policy, because he was a director of GBC, a Gilbane subsidiary.

81. In addition, Richard Gilbane was a director of GBC, and hence an **Insured Person,** up until February 2002.

82. Therefore, coverage for the Underlying Action is barred pursuant to Section 6(c) of the 2004 Policy, because the Underlying Action is a "**Claim**" that is "brought or maintained on behalf of any **Insured**," and because Richard Gilbane served in an "**Insured Capacity**" as an "**Insured Person**" less than four years before that "**Claim**" was first made.

83. Accordingly, Federal is entitled to a declaration that coverage for the Underlying Action is excluded by Section 6(c) of the 2004 Policy.

**Count III**
**(Declaratory Judgment -- Breach of the Duty to Cooperate – All Defendants)**

84. Plaintiff Federal re-alleges and incorporates the foregoing paragraphs, as though fully set forth herein.

85. Section 16 of the 2004 Policy gives Federal the right to effectively associate with the Insureds in the defense, settlement and investigation of any **Claim,** and also requires the Insureds to provide Federal with the information, assistance and cooperation that Federal reasonably requests. Similarly, Section 11 of the 2002 Policy also gives Federal the right to effectively associate with the Insureds in the defense, settlement and investigation of any **Claim,** and also requires the Insureds to provide Federal with the information, assistance and cooperation that Federal reasonably requests.

86. In connection with its investigation of this matter, and pursuant to its rights under the Policies to associate with the Insureds in the investigation and defense of **Claims**, Federal has requested that Gilbane and the Director Defendants provide certain information and documents pertaining to the dispute with Richard Gilbane. Gilbane and the Director Defendants have refused to comply with those requests for information, in defiance of their obligation under the Policies. They also breached their contractual duty to cooperate by refusing to meet with Federal

to discuss the defense of the Underlying Action, even though Federal is currently providing a defense for that **Claim**.

87. In light of the foregoing, coverage for the Underlying Action is barred due to the insureds' breach of their contractual duty to cooperate with Federal and to provide Federal with the information, assistance and cooperation that it reasonably requests.

88. A justiciable controversy exists between Federal on the one hand and the Defendants on the other concerning whether coverage for the Underlying Action is barred.

89. Entry of a declaratory judgment is necessary and appropriate to avoid the risks and uncertainty arising out of the above-described controversy.

90. Accordingly, Federal is entitled to a declaration that coverage for the Underlying Action is excluded by Section 16 of the 2004 Policy and/or Section 11 of the 2002 Policy and that coverage is barred due to the Defendants breach of their contractual duty to cooperate with Federal in the investigation and defense of **Claims**.

**COUNT IV**

**(Declaratory Judgment – Exclusions, Conditions and Limitations on Coverage – All Defendants)**

91. Plaintiff Federal re-alleges and incorporates the foregoing paragraphs, as though fully set forth herein.

92. In the alternative to the relief sought in Counts I, II and III of the Complaint, and in the event such relief were not granted, a justiciable controversy exists between Federal on the one hand and the Defendants on the other concerning the scope of coverage for the Underlying Action.

93. Entry of a declaratory judgment is necessary and appropriate to avoid the risks and uncertainty arising out of the above-described controversy.

94. Federal is entitled to a declaratory judgment that it has no obligation to provide coverage for the Underlying Action, because coverage is barred by several terms, conditions, limitations and exclusions of the Policies.

95. The 2004 Policy only provides coverage to the "**Organization[s]**" for "**Securities Claims**" first made against them during the "**Policy Period**," and further states that the term "**Securities Claim**" does not include "any **Shareholder Derivative Demand**." Accordingly, to the extent that the Underlying Action constitutes a "**Shareholder Derivative Demand**" as that term is defined in the 2004 Policy, there is no coverage for Gilbane or GPI.

96. As set forth in Count I, the parties intended for Gilbane's subsidiaries to be included as "**Organization[s]**" under the 2004 Policy. In the alternative, if Gilbane's subsidiaries are not "**Organization[s]**," then there is no coverage under the 2004 Policy for GPI, nor is there coverage for any of the Director Defendants in the Underlying Action to the extent that they were acting in their capacity as directors and officers of GPI or any other Gilbane subsidiary.

97. To the extent that the Underlying Action Complaint seeks the return or disgorgement of monies that the Defendants had no lawful right to possess in the first place, there is no coverage under the 2004 Policy, because the return of such ill-gotten gain does not constitute an insurable "**Loss**."

98. Coverage for the Underlying Action may also be barred by Section 6(b) of the 2004 Policy, which excludes coverage for **Loss** on account of any **Claim** that is "based upon, arising from, or in consequence of any demand, suit or other proceeding pending . . . . against any **Insured** on or prior to" March 5, 2002.

99. Coverage for the Underlying Action may be barred in whole or in part by Section 7(b) of the 2004 Policy, which excludes coverage for any **Claim** against an **Insured Person** that is "based upon, arising from, or in consequence of . . . the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such Insured Person" or "such **Insured Person** having gained in fact any profit, remuneration or advantage to which such **Insured Person** was not legally entitled."

100. Coverage for the Underlying Action may be barred in whole or in part by Section 8(a) of the 2004 Policy, which excludes coverage for any **Securities Claim** against an

**Organization** "based upon, arising from or in consequence of . . . the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by **Organization** or by any past present or future chief financial officer, in-house counsel, president, chief executive officer or chairperson of an **Organization**; or . . such **Organization** having gained in fact any profit, remuneration or advantage to which such **Organization** was not legally entitled."

101. As set forth above, Defendants have sought coverage for the Underlying Action under the 2004 Policy. In the alternative, if (and to the extent that) the Underlying Action is deemed to be a "**Claim**" that was actually "first made" during the Policy Period of the 2002 Policy, at the time of Richard Gilbane's March and April 2002 letters and 2002 Counterclaim, coverage would be barred by certain terms, conditions and exclusions of the 2002 Policy, including the following:

a. Coverage for the Underlying Action may be barred in whole or in part by the Warranty Exclusion, because this **Claim** arises out of facts and circumstances that the **Insureds** were aware of and that they knew or should have known might give rise to a claim as of March 15, 2002, the date that the Warranty Question was finally submitted to Federal.

b. Coverage for the Underlying Action may be barred in whole or in part because the Defendants failed to give notice of this "**Claim**" "as soon as practicable" after it was first made as mandated by Section 10 of the 2002 Policy, which required, as a "condition precedent" to coverage, that the Insureds provide such timely notice.

c. Coverage for the Underlying Action may be barred in whole or in part by Section 5(b) of the 2002 Policy, to the extent that this **Claim** is "based upon, arising from, or in consequence of any demand, suit or other proceeding pending . . on or prior to" March 5, 2002.

d. Coverage for the Underlying Action may be barred in whole or in part by Section 5(c) of the 2002 Policy, which excludes coverage for any **Claim** that is "brought or maintained by or on behalf of any **Insured**."

e. Coverage for the Underlying Action may be barred in whole or in part by Section 6(b) of the 2002 Policy, which excludes coverage for any **Claim** against an **Insured Person** that is "based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person** . . ."

f. Coverage for the Underlying Action may be barred in whole or in part by Section 6(c) of the 2002 Policy, which excludes coverage for any **Claim** against an **Insured Person** that is "based upon, arising from, or in consequence of such **Insured Person** having gained in fact any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled . . ."

g. Coverage for the Underlying Action may be barred in whole or in part by Section 6.1(a) of the 2002 Policy, which excludes coverage for any **Claim** against an **Insured Organization** that is "based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by any past, present or future chief financial officer, President or Chairman of an **Insured Organization**. . ."

h. Coverage for the Underlying Action may be barred in whole or in part by Section 6.1(b) of the 2002 Policy, which excludes coverage for any **Claim** against an **Insured Organization** that is "based upon, arising from, or in consequence of an **Insured Organization** having gained in fact any profit or advantage to which such **Insured Organization** was not legally entitled . . ."

i. To the extent that the Underlying Action Complaint seeks the return or disgorgement of monies that the Defendants had no lawful right to possess in the

first place, there is no coverage under the 2002 Policy, because the return of such ill-gotten gain does not constitute an insurable "**Loss**."

102. Accordingly, for the reasons set forth above in this Count IV of the Complaint, Federal is entitled to a declaration that there is no coverage under either the 2004 or 2002 Policy for the Underlying Action in the event that Federal does not receive that relief under Counts I, II and/or III, as an alternative to such relief.

**COUNT V**

(Reimbursement\Recoupment – Gilbane, GPI and the Director Defendants)

103. Plaintiff Federal re-alleges and incorporates the foregoing paragraphs, as though fully set forth herein.

104. Section 16(e) of the 2004 Policy provides that "[a]ny advancement of **Defense Costs** shall be repaid to [Federal] by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section."

105. Federal has agreed to advance the **Defense Costs** incurred by the Director Defendants in connection with the Underlying Action, subject to a full reservation of rights to limit or deny coverage on any grounds available under the Policies or at law.

106. For the reasons set forth in this Complaint, coverage for the Underlying Action is barred by numerous terms, conditions and exclusions and, accordingly, the **Defense Costs** advanced by Federal are not insured under the 2004 Policy.

107. Federal is entitled to a monetary judgment against the Gilbane, GPI and the Director Defendants for the entire amount of **Defense Costs** that have been or will be paid on their behalf by Federal in connection with the Underlying Action, plus applicable interest.

WHEREFORE, Plaintiff Federal Insurance Company respectfully requests that the Court enter a judgment declaring the rights as set forth herein, awarding Federal monetary damages as

requested herein, awarding Federal its costs and attorney's fees and granting such other and further relief as the Court may deem just.

Dated: April 10, 2007

Respectfully submitted,

By: ______________________

Stephen J. Reid, Jr., Bar Id. No. 2811
sjr@blishcavlaw.com
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, R.I. 02903
Tel: (401) 831-8900
Fax: (401) 751-7542

Attorneys for Defendants
Federal Insurance Company