UNITED STATES DISTRICT COURT
FROM THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FEDERAL INSURANCE COMPANY,<br>Plaintiff,<br><br>v.<br><br>GILBANE, INC., GILBANE PROPERTIES, INC., GILBANE BUILDING COMPANY, PAUL CHOQUETTE, THOMAS F. GILBANE JR., ROBERT V. GILBANE, WILLIAM J. GILBANE, JR. and RICHARD T. GILBANE,<br>Defendants. | Case No. C.A. 07-132S<br><br>**Jury Trial Demanded by Defendants on All Counterclaims So Triable** |

**ANSWER AND COUNTERCLAIMS OF GILBANE, INC., GILBANE PROPERTIES, INC., GILBANE BUILDING COMPANY, PAUL CHOQUETTE, THOMAS F. GILBANE JR., ROBERT V. GILBANE and WILLIAM J. GILBANE, JR.**

Defendants Gilbane, Inc., Gilbane Properties, Inc., Gilbane Building Company, Paul Choquette, Thomas F. Gilbane, Jr., Robert V. Gilbane, and William J. Gilbane, Jr. (collectively, "Gilbane") respond to the numbered paragraphs of plaintiff's complaint as follows:

**PARTIES**

1. Gilbane is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1.

2. Admitted.

3. Denied. Further answering, Gilbane states that Gilbane Properties, Inc. ("GPI") is now named Gilbane Development Company and admits the allegations of Paragraph 3 in regard to Gilbane Development Company.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

## JURISDICTION AND VENUE

8. [misnumbered] Paragraph 8 states a legal conclusion to which no response is required.

9. [misnumbered] Paragraph 9 states a legal conclusion to which no response is required.

## FACTS

### A. THE POLICIES

10. Admitted.

11. Gilbane admits that on or about January 8, 2002 , Gilbane, Inc. submitted to Aon Risk Services, Inc. ("Aon") a written application in connection with applying for directors and officers insurance coverage, states that the application speaks for itself, and denies the remaining allegations of paragraph 11.

12. Gilbane states that the application speaks for itself, and otherwise denies the allegations of paragraph 12.

13. Gilbane states that the application speaks for itself and otherwise denies the allegations of paragraph 13.

14. Gilbane states that the application speaks for itself and otherwise denies the allegations of paragraph 14.

15. Gilbane admits that Aon was Gilbane's broker and states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15.

16. Gilbane admits that Aon was Gilbane's broker and states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 16.

17. Gilbane admits that Gilbane, Inc. submitted to Aon a section of an application, which section was dated March 12, 2002, states that the document speaks for itself, states that it is without knowledge or information sufficient to form a belief as to whether or when Federal received the application, and denies the remaining allegations of paragraph 17.

18. Gilbane is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18.

19. Gilbane is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 19. Further answering, Gilbane states that the referenced insurance policy speaks for itself, and denies the remaining allegations of paragraph 19.

20. Gilbane states that the referenced insurance policy speaks for itself, and otherwise denies the allegations of paragraph 20.

21. Gilbane states that the referenced insurance policy speaks for itself, and otherwise denies the allegations of paragraph 21.

22. Gilbane states that the referenced insurance policy speaks for itself, and otherwise denies the allegations of paragraph 22.

23. Gilbane states that the referenced insurance policy speaks for itself, and otherwise denies the allegations of paragraph 23.

24. Gilbane admits that Gilbane, Inc. is a holding company and that Gilbane Properties, Inc. and Gilbane Building Company were subsidiaries of Gilbane, Inc. when Gilbane, Inc. applied for the 2002 Policy. Gilbane denies the remaining allegations of paragraph 24.

25. Gilbane states that the first sentence of paragraph sets forth a legal conclusion to which no response is required. To the extent a response is required, denied. As to the remaining allegations of paragraph 25, Gilbane states that the referenced insurance policy speaks for itself, otherwise, denied.

26. Gilbane states that the referenced insurance policy speaks for itself and denies the remaining allegations of paragraph 26.

27. Admitted.

28. Gilbane states that referenced insurance policies speak for themselves and otherwise denies the allegations of paragraph 28.

29. Admitted.

30. Gilbane states that the referenced insurance policies speak for themselves and otherwise denies the allegations of paragraph 30.

31. Gilbane states that Paragraph 31 sets forth a legal conclusion to which no response is required. To the extent a response is required, Gilbane states that the referenced insurance policies speak for themselves and otherwise denies the allegations of paragraph 31.

32. Gilbane states that the referenced insurance policies speak for themselves and otherwise denies the allegations of paragraph 32.

33. Gilbane states that the referenced insurance policies speak for themselves and otherwise denies the allegations of paragraph 33.

34. Denied.

35. Gilbane admits that Gilbane, Inc. is a holding company. Gilbane denies the remaining allegations of paragraph 35.

36. Gilbane is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36.

37. Gilbane is without knowledge or information sufficient to form a belief as to the truth of the allegations of first sentence of paragraph 37. Gilbane admits the allegations of the second sentence of paragraph 37.

## B. THE UNDERLYING ACTION

38. Gilbane admits that Richard Gilbane is the largest shareholder of Gilbane, Inc. and that he held the title of director of Gilbane Building Company from January 6, 1998 through February 2002. Gilbane denies the remaining allegations of paragraph 38.

39. Gilbane admits that Paul Choquette is the Chairman and CEO of Gilbane, Inc. and that he received a letter dated March 11, 2002 from an attorney representing Richard Gilbane. Further answering, Gilbane states that the referenced letter speaks for itself and otherwise denies the remaining allegations of paragraph 39.

40. Gilbane denies the allegations set forth in the first sentence of paragraph 40. As to the remaining allegations, Gilbane admits that Gilbane, Inc. received a letter dated April 11, 2002 from an attorney representing Richard Gilbane and states that the referenced letter speaks for itself; otherwise, denied.

41. Gilbane admits the allegations set forth in the first sentence of paragraph 41. As to the remaining allegations, Gilbane states that the referenced Complaint speaks for itself, otherwise, denied.

42. Gilbane admits the allegations set forth in the first and last sentences of paragraph 42. As to the remaining allegations, Gilbane states that the referenced Answer and Counterclaim speaks for itself, otherwise, denied.

43. Gilbane admits that the members of the Gilbane, Inc. Board of Directors received a letter dated September 21, 2004 from an attorney representing Richard Gilbane, states that the referenced letters speak for themselves and denies the remaining allegations of paragraph 43.

44. Gilbane states that the referenced letter speaks for itself and otherwise denies the remaining allegations of paragraph 44.

45. Gilbane admits that the Board of Directors voted not to institute legal proceedings to recover the net death benefit proceeds paid to Thomas F. Gilbane, Robert V. Gilbane and

William J. Gilbane from a Split Dollar Insurance Policy on the life of Jean Gilbane and that the Board entered into a tolling agreement with Richard Gilbane. Gilbane denies the remaining allegations of paragraph 45.

46. Gilbane is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 46.

47. Gilbane admits that an attorney representing Gilbane, Inc. received a letter dated December 3, 2004 from an attorney representing Richard Gilbane, states that the referenced letters speak for themselves and denies the remaining allegations of paragraph 47.

48. Gilbane admits that an attorney representing Gilbane, Inc. received a letter dated December 3, 2004 from an attorney representing Richard Gilbane, that there was a meeting between the Gilbane, Inc. Board of Directors and Richard Gilbane and his attorney on December 16, 2004 and that Gilbane agreed to treat the December 3, 2004 letter and the December 16, 2004 meeting as a demand for the purposes of Rhode Island Superior Court Rule 23.1. Gilbane denies the remaining allegations of paragraph 48.

49. Admitted.

50. Gilbane states that the referenced Complaint speaks for itself, and otherwise denies the allegations set forth in paragraph 50.

## C. THE COVERAGE DISPUTE

51. Admitted.

52. Gilbane admits that Federal has agreed to advance the Defense Costs incurred by Paul Choquette, Thomas F. Gilbane, Jr., Robert V. Gilbane, and William J. Gilbane in the Underlying Action subject to a reservation of rights, states that the referenced reservation of rights speaks for itself and denies the remaining allegations of paragraph 52.

53. Gilbane states that the referenced reservation of rights speaks for itself and denies the remaining allegations of paragraph 53.

54. Gilbane admits that Richard Gilbane held the title of director of Gilbane Building Company from January 6, 1998 through some time in February 2002 and that Gilbane Building Company is a subsidiary of Gilbane, Inc. The remaining allegations of paragraph 54 set forth a legal conclusion to which no response is required. To the extent a response is required, denied.

55. Gilbane admits the allegations set forth in the first sentence of paragraph 55. Further answering, Gilbane admits that it contends that Gilbane Properties, Inc. and Gilbane Building Company are not "Organizations" as that term is defined by the 2004 Policy and that Richard is not an "Insured Person" as that term is defined by the 2004 Policy. Gilbane denies the remaining allegations of paragraph 55.

56. Gilbane admits that Federal has advised Gilbane that it disputes Gilbane's position, and that Federal contends that Gilbane and Federal intended the term "Organization" in the 2004 Policy to include Gilbane Building Company. Gilbane denies the remaining allegations set forth in paragraph 56.

57. Gilbane admits that Gilbane, Inc.'s general counsel received a letter dated June 28, 2005 from Federal and that an attorney representing it in the Underlying Action received a letter dated January 24, 2006 from Federal, and states that those letters speak for themselves. Gilbane denies the remaining allegations of paragraph 57.

58. Gilbane admits that Gilbane, Inc.'s general counsel received a letter dated July 28, 2006 from an attorney representing Federal, states that the referenced letters speak for themselves, and otherwise denies the allegations of paragraph 58.

59. Admitted.

60. Denied.

61. Gilbane admits that Gilbane, Inc.'s general counsel received a letter dated September 18, 2006 from an attorney representing Federal and states that the letter speaks for itself. Gilbane denies the remaining allegations of paragraph 61.

62. Denied.

63. Gilbane admits that Federal contacted Gilbane, Inc.'s general counsel by telephone on multiple occasions and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the first sentence of paragraph 63. Gilbane denies the remaining allegations of paragraph 63.

64. Gilbane admits that its counsel sent a letter to Federal dated December 22, 2006, and states that the letter speaks for itself. Gilbane denies the remaining allegations of paragraph 64.

65. Gilbane admits that representatives of Gilbane met with representatives of Federal on March 14, 2007. Gilbane denies the remaining allegations of paragraph 65.

66. Denied.

**COUNT I**
**(REFORMATION – MUTUAL MISTAKE – ALL DEFENDANTS)**

67. Gilbane re-alleges and incorporates the foregoing paragraphs as set though fully set forth herein.

68. The allegations of paragraph 68 set forth a legal conclusion to which no response is required. To the extent a response is required, denied.

69. The allegations of paragraph 69 set forth a legal conclusion to which no response is required. To the extent a response is required, denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

**COUNT II**
**(DECLARATORY JUDGMENT – EXCLUSION 6(C) – ALL DEFENDANTS)**

74. [misnumbered] Gilbane re-alleges and incorporates the foregoing paragraphs, as though fully set forth herein.

75. The allegations of paragraph 75 set forth a legal conclusion to which no response is required. To the extent a response is required, denied.

76. The allegations of paragraph 76 set forth a legal conclusion to which no response is required. To the extent a response is required, denied.

77. Denied.

78. Gilbane states that the referenced insurance policy speaks for itself and denies the remaining allegations of paragraph 78.

79. Gilbane denies the allegations set forth in the second sentence of paragraph 79. As to the remaining allegations, Gilbane states that the referenced insurance policy speaks for itself, otherwise, denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

**COUNT III**
**(DECLARATORY JUDGMENT – BREACH OF DUTY TO COOPERATE – ALL DEFENDANTS)**

84. Gilbane re-alleges and incorporates the foregoing paragraphs, as though fully set forth herein.

85. Paragraph 85 sets forth legal conclusions to which no response is required. To the extent a response is required, Gilbane states that the referenced insurance policies speak for themselves, and otherwise denies the allegations of paragraph 85.

86. Gilbane admits that Federal has requested certain information and documents from Gilbane, and that Federal has agreed to advance the Defense Costs incurred by the director defendants in the Underlying Action subject to a reservation of rights. Gilbane denies the remaining allegations of paragraph 86.

87. Denied.

88. The allegations of paragraph 88 set forth a legal conclusion to which no response is required. To the extent a response is required, denied.

89. The allegations of paragraph 89 set forth a legal conclusion to which no response is required. To the extent a response is required, denied.

90. Denied.

**COUNT IV**
**(DECLARATORY JUDGMENT – EXCLUSIONS, CONDITIONS AND LIMITATIONS ON COVERAGE – ALL DEFENDANTS)**

91. Gilbane re-alleges and incorporates the foregoing paragraphs, as though fully set forth herein.

92. The allegations of paragraph 92 set forth a legal conclusion to which no response is required. To the extent a response is required, denied.

93. The allegations of paragraph 93 set forth a legal conclusion to which no response is required. To the extent a response is required, denied.

94. Denied.

95. Paragraph 95 sets forth a legal conclusion to which no response is required. To the extent a response is required, Gilbane states that the referenced insurance policy speaks for itself, and otherwise denies the allegations of paragraph 95.

96. Gilbane denies the first sentence of paragraph 96. The second sentence sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.

97. Paragraph 97 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.

98. Paragraph 98 sets forth a legal conclusion to which no response is required. To the extent a response is required, Gilbane states that the referenced policy speaks for itself, and otherwise denies the allegations of paragraph 98.

99. Paragraph 99 sets forth a legal conclusion to which no response is required. To the extent a response is required, Gilbane states that the referenced policy speaks for itself, and otherwise denies the allegations of paragraph 99.

100. Paragraph 100 sets forth a legal conclusion to which no response is required. To the extent a response is required, Gilbane states that the referenced policy speaks for itself, and otherwise denies the allegations of paragraph 100.

101. Gilbane admits the allegations set forth in the first sentence of paragraph 101. The remaining allegations of paragraph 101 set forth legal conclusions to which no response is required. To the extent a response is required, Gilbane states that that the referenced insurance policy speaks for itself, and otherwise denies the allegations of paragraph 101.

102. Denied.

**COUNT V**
**(REIMBURSEMENT/RECOUPMENT – GILBANE, GPI AND THE DIRECTOR DEFENDANTS)**

103. Gilbane re-alleges and incorporates the foregoing paragraphs, as though fully set forth herein.

104. Gilbane states that the referenced insurance policy speaks for itself, and otherwise denies the allegations of paragraph 104.

105. Gilbane admits that Federal has agreed to advance the Defense Costs incurred by the director defendants in the Underlying Action subject to a reservation of rights. Gilbane states that the referenced reservation of rights speaks for itself, and otherwise denies the remaining allegations of paragraph 105.

106. Paragraph 106 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.

107. Denied.

## AFFIRMATIVE DEFENSES

### *First Affirmative Defense*

Federal is estopped from asserting that the "Insured v. Insured" exclusion bars coverage for the shareholder derivative claims asserted by Richard.

### *Second Affirmative Defense*

Federal fails to state a claim upon which relief may be granted.

## COUNTERCLAIMS

### THE PARTIES

1. Defendant/Plaintiff-in-Counterclaim Gilbane, Inc. is a privately held corporation organized and incorporated under the laws of the State of Rhode Island, with a principal place of business in Providence, Rhode Island.

2. Defendant/Plaintiff-in-Counterclaim Gilbane Properties, Inc. ("GPI"), which is now named Gilbane Development Company, is a corporation organized and incorporated under the laws of the State of Rhode Island, with a principal place of business in Providence, Rhode Island. Gilbane Development Company is a wholly-owned subsidiary of Gilbane, Inc.

3. Defendant/Plaintiff-in-Counterclaim Gilbane Building Company ("GBC") is a corporation organized and incorporated under the laws of the State of Rhode Island, with a principal place of business in Providence, Rhode Island. GBC is a wholly-owned subsidiary of Gilbane, Inc.

4. Defendant/Plaintiff-in-Counterclaim Paul Choquette ("Choquette") is an individual citizen and resident of the State of Rhode Island.

5. Defendant/Plaintiff-in-Counterclaim Thomas F. Gilbane, Jr. ("Thomas") is an individual citizen and resident of the State of Rhode Island.

6. Defendant/Plaintiff-in-Counterclaim Robert V. Gilbane ("Robert") is an individual citizen and resident of the State of Rhode Island.

7. Defendant/Plaintiff-in-Counterclaim William J. Gilbane, Jr. ("William") is an individual citizen and resident of the State of Rhode Island.

8. On information and belief, Plaintiff/Defendant-in-Counterclaim Federal Insurance Company ("Federal") is a corporation organized and incorporated under the laws of the State of Indiana, with a principal place of business in New Jersey.

**JURISDICTION AND VENUE**

9. The amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and there is complete diversity of citizenship between the defendants/plaintiffs-in-counterclaim and the plaintiff/defendant-in-counterclaim.

10. All of the defendants/plaintiffs-in-counterclaim reside in this district, and a substantial portion of the events or omissions giving rise to this claim occurred in this district.

**THE UNDERLYING CLAIMS**

***A. RICHARD'S SEPTEMBER 21, 2004 LETTER***

11. In or about September 2004, the Board of Directors of Gilbane, Inc. ("the Board") received a demand letter dated September 21, 2004 from an attorney representing Richard T. Gilbane ("Richard"). A true and accurate copy of the September 21, 2004 letter is attached as Exhibit A.

12. The September 21, 2004 letter demanded that Gilbane, Inc. institute legal proceedings against Thomas and Robert to recover the proceeds from a split dollar insurance policy purchased on the life of Jean Gilbane.

13. The September 21, 2004 letter alleged that Thomas and Robert had used company funds to purchase the split dollar insurance policy, but planned either to keep the proceeds themselves or to use the proceeds for the allegedly improper purpose of purchasing the stock of shareholders who were not employed by Gilbane.

14. The September 21, 2004 letter was the first notice to the defendants/plaintiffs-in-counterclaim that Richard was asserting any sort of claim relating to the split dollar insurance policy.

### *B. RICHARD'S DECEMBER 3, 2004 LETTER*

15. In or about December 2004, an attorney representing Gilbane, Inc. received a letter dated December 3, 2004 from an attorney representing Richard. A true and accurate copy of the December 3, 2004 letter is attached as Exhibit B.

16. The December 3, 2004 letter alleged that Choquette, Robert, Thomas and William had over-compensated Robert.

17. The December 3, 2004 letter was the first notice to the defendants/plaintiffs-in-counterclaim that Richard was asserting any sort of claim relating to Robert's compensation.

### *C. RICHARD'S COMPLAINT*

18. In or about February 2005, Richard filed suit in Providence Superior Court, Civ. A. No. 05-0612, against Gilbane, Inc., GPI, Choquette, Robert, Thomas and William.

19. A true and accurate copy of Richard's complaint is attached as Exhibit C.

20. The complaint filed by Richard asserts seven counts. It refers to Choquette, Robert, Thomas and William collectively as "the management shareholders."

21. Count I asserts a direct claim against Gilbane, Inc. and the management shareholders for breach of fiduciary duty. The alleged breaches of fiduciary duty are: (i) the use of company funds to purchase a split dollar insurance policy on the life of Jean Gilbane that improperly benefited Thomas, Robert and James Gilbane, (ii) the failure to pay dividends, and (iii) the payment of excessive compensation to Robert.

22. Counts II, III and IV assert derivative claims that relate to the split dollar insurance policy. Count II asserts a derivative claim against the management shareholders for breach of fiduciary duty. Count III asserts a derivative claim against the management

shareholders for usurpation of corporate opportunities. Count IV asserts a derivative claim against Thomas and Robert for unjust enrichment.

23. Counts V, VI and VII assert derivative claims that relate to the compensation paid to Robert. Count V asserts a derivative claim against the management shareholders for breach of fiduciary duty. Count VI asserts a derivative claim against the management shareholders for usurpation of corporation opportunities. Count VII asserts a derivative claim against Robert for unjust enrichment.

24. The Complaint was the first notice to the defendants/plaintiffs-in-counterclaim that Richard was asserting any sort of claim relating to the alleged failure to pay dividends.

**GILBANE'S DECISION TO PURCHASE D&O COVERAGE**

25. Gilbane, Inc. purchased from Federal three consecutive Executive Protection policies, all numbered 8169-1596. The policies were effective from March 5, 2002 to March 5, 2003; March 5, 2003 to March 5, 2004; and March 5, 2004 to March 5, 2005.

26. The policies are what are commonly known as directors and officers ("D&O") policies. D&O policies generally provide coverage to a company's officers and directors for claims asserted against them for actions and omissions within the scope of their duties as officers and directors and to the company for amounts paid to indemnify officers and directors for those claims.

27. Gilbane had never purchased D&O coverage before it purchased the Federal D&O policy for the period from March 5, 2002 through March 5, 2003.

28. Before Gilbane, Inc. purchased the Federal D&O policy for the period from March 5, 2002 to March 5, 2003, Gilbane, Inc. was provided with written materials on behalf of Federal that stated that the "Insured v. Insured" exclusion often included in D&O policies does not usually apply to shareholder derivative claims.

29. Federal knew or should have known that Gilbane, Inc. was a closely-held corporation, and that several of its shareholders served or had previously served as officers and directors of Gilbane, Inc. or affiliated companies.

30. Neither Federal nor anyone acting on Federal's behalf advised Gilbane, Inc. that the "Insured v. Insured" exclusion might arguably have broader application in a closely-held corporation, where several of the company's shareholders served or had previously served as officers and directors.

31. Gilbane, Inc. relied on the written materials provided to it on behalf of Federal, including the representation in those materials that the "Insured v. Insured" exclusion does not apply to shareholder derivative claims, in deciding to purchase D&O coverage.

## THE 2004 POLICY

32. The Federal D&O policy purchased by Gilbane for the period from March 5, 2004 to March 5, 2005 ("the Policy"), a true and accurate copy of which is attached as Exhibit D, provides that Federal shall pay, on behalf of each "Insured Person":

> Loss for which the Insured Person is not indemnified by the Organization and which the Insured Person becomes legally obligated to pay on account of any Claim first made against the Insured Person, individually or otherwise, during the Policy Period . . . for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured Person before or during the Policy Period, but only if such Claim is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

33. The Policy provides that Federal shall pay, on behalf of the "Organization":

> Loss for which the Organization grants indemnification to an Insured Person, as permitted or required by law, and which the Insured Person becomes legally obligated to pay on account of any Claim first made against the Insured Person, individually and otherwise, during the Policy Period . . . for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured Person before or during the Policy Period, but only if such Claim is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

34. The Policy defines "Loss" as "the amount that an Insured Person . . . becomes legally obligated to pay on account of any covered Claim, including but not limited to damages, . . . judgments, settlements, pre-judgment and post-judgment interest and Defense Costs." The 2004 Policy defines the term "Defense Costs" to mean "reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses . . . incurred in defending any Claim . . . ".

35. The Policy defines "Insured Person" as "any natural person who was, now is or shall become a duly elected or appointed director, officer, Manager, or the in-house general counsel of any Organization chartered in the United States of America . . .".

36. The Policy defines "Organization" as Gilbane, Inc.

37. The Policy defines "Claim" as:

(a) a written demand for monetary damages or non-monetary relief;

(b) a civil proceeding commenced by the service of a complaint or similar pleading; or

(c) a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document

Against an Insured Person for a Wrongful Act, including any appeal therefrom.

38. The Policy defines "Wrongful Act" as:

(a) any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an Insured Person in his or her Insured Capacity . . ., or

(b) any other matter claimed against an Insured Person solely by reason of his or her serving in an Insured Capacity.

39. Section 15 of the Policy provides that insureds shall give Federal written notice of any Claim no later than 60 days after the date on which the Organization's chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first

becomes aware that the Claim has been made. By endorsement, Federal extended the time period for giving written notice from 60 days to 90 days.

**THE UNDERLYING CLAIMS FALL WITHIN THE 2004 POLICY'S INSURING CLAUSES**

40. Richard's September 21, 2004 letter, his December 3, 2004 letter and his complaint assert "Claims" for "Wrongful Acts," as those terms are defined by the policy, against Choquette, Thomas, Robert and William (the "Underlying Claims").

41. Choquette, Thomas, Robert and William all are "Insured Persons" as that term is defined by the Policy.

42. The Underlying Claims were first made between March 5, 2004 and March 5, 2005.

43. Gilbane timely notified Federal of the Underlying Claims.

**NONE OF THE POLICY'S EXCLUSIONS BAR COVERAGE**

44. Federal has reserved its rights to disclaim coverage for the Underlying Claims based on, among other things, the "Insured v. Insured" exclusion and the "Prior Demand" exclusion.

45. None of the exclusions in the 2004 Policy, including but not limited to the "Insured v. Insured" and "Prior Demand" exclusions cited by Federal, bar coverage for the Underlying Claims.

***A. THE "INSURED V. INSURED" EXCLUSION***

46. Section 6(c) of the policy bars from coverage certain claims "[b]rought or maintained by or on behalf of any Insured in any capacity . . .". This exclusion is commonly known as the "Insured v. Insured" exclusion.

47. Federal contends that because Richard previously was a director of GBC, he is an "Insured Person" as that term is defined by the Policy and the Insured v. Insured exclusion bars coverage for the Underlying Claims.

48. Subsection (6)(c)(iv) of the Policy carves out from the exclusion for Claims brought by Insureds any "Claim brought by an Insured Person who has not served in an Insured Capacity for at least four (4) years prior to the date such claim is first made and who brings and maintains such Claim without any active assistance or participation of, or solicitation by, the Organization or any other Insured Person who is serving or has served in an Insured Capacity within such four (4) year period."

49. The policy defines "Insured Capacity" as "the position or capacity of an Insured Person that causes him or her to meet the definition of Insured Person set forth in this coverage section . . .".

50. Richard has not served in an Insured Capacity for at least four years prior to the date on which the Claims asserted by him were first made.

51. Richard brought and is maintaining his Claims without any active assistance or participation of, or solicitation by, the Organization or any other Insured Person who is serving or has served in an Insured Capacity within the four year period prior to the date on which Richard's claims were first made.

52. The Underlying Claims therefore satisfy all of the elements of the carve-out set forth in subsection 6(c)(iv) of the Policy.

53. Subsection 6(c)(i) of the Policy carves out from the exclusion for Claims brought by Insureds any "Claim brought or maintained derivatively on behalf of the Organization by one or more securityholders of the Organization, provided such Claim is brought and maintained without the active assistance or participation of, or solicitation by, any Insured Person."

54. The Underlying Claims include Claims that Richard brought and is maintaining derivatively on behalf of the Organization, that is, Gilbane, Inc.

55. Richard is a shareholder of Gilbane, Inc., and his claims therefore are brought and maintained by a securityholder of the Organization.

56. Richard brought and is maintaining his Claims without the active assistance or participation of, or solicitation by, any other Insured Person.

57. The Underlying Claims therefore include claims that satisfy all of the elements of the carve-out in subsection 6(c)(i) of the Policy for shareholder derivative claims.

58. The purpose and intent of the carve-out for shareholder derivative claims is to exclude from coverage derivative claims brought by officers and directors in collusion with the insured organization. Richard's claims are not collusive.

***B. The "Prior Demand" Exclusion***

59. Section 6(b) of the Policy provides that Federal "shall not be liable for Loss on account of any Claim . . . based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any Insured, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein." This exclusion is commonly known as the "Prior Demand" exclusion.

60. The "Pending or Prior Date" set forth in Item 7 of the Declarations is March 5, 2002.

61. The Claims asserted by Richard are not based upon, do not arise from and are not in consequence of any demand, suit or other proceeding that was pending against any Insured on or before March 5, 2002.

**FEDERAL'S REFUSAL TO PAY LEGAL FEES AND COSTS INCURRED IN DEFENDING THE UNDERLYING CLAIMS**

62. The Policy obligates Federal to advance on a current basis "Defense Costs" allocable to a covered "Loss," as those terms are defined by the 2004 Policy.

63. Choquette, Thomas, Robert and William and/or Gilbane, Inc. have incurred legal fees and expenses in defending Choquette, Thomas, Robert and William against the Underlying

Claims. These legal fees and expenses constitute "Defense Costs" that are allocable to a covered "Loss."

64. Federal has agreed to provide coverage for the Defense Costs incurred by or on behalf of Choquette, Thomas, Robert and William in defending Choquette, Thomas, Robert and William against the Underlying Claims.

65. Choquette, Thomas, Robert and William and/or Gilbane, Inc. have submitted to Federal bills for legal fees and costs incurred in defending Choquette, Thomas, Robert and William against the Underlying Claims.

66. Federal improperly has refused to pay approximately $30,000 of the legal fees and costs incurred by or on behalf of Choquette, Thomas, Robert and William in defending the Underlying Claims.

67. Even as to the legal fees and costs it has paid, Federal has delayed unreasonably in paying those legal fees and costs.

## COUNT I
## DECLARATORY RELIEF

68. Gilbane repeats and incorporates by reference the allegations set forth in paragraphs 1 through 67.

69. There is an actual and justiciable controversy between Gilbane and Federal concerning whether the 2004 Policy covers the Underlying Claims.

70. Declaratory relief from this Court will terminate the controversy between the parties with respect to their respective rights and duties under the Policy in regard to the Underlying Claims.

## COUNT II
## BREACH OF CONTRACT

71. Gilbane repeats and incorporates by reference the allegations set forth in paragraphs 1 through 70.

72. The Policy obligates Federal to advance on a current basis "Defense Costs" allocable to a covered "Loss," as those terms are defined by the 2004 Policy.

73. Choquette, Thomas, Robert and William and/or Gilbane, Inc. have incurred legal fees and expenses in defending Choquette, Thomas, Robert and William against the Underlying Claims. These legal fees and expenses constitute "Defense Costs" that are allocable to a covered "Loss."

74. Federal has breached its obligation to advance on a current basis "Defense Costs" allocable to a covered "Loss" by improperly refusing to pay or delayed in paying the legal fees and expenses incurred by or on behalf of Choquette, Thomas, Robert and William in defending the Underlying Claims.

75. Choquette, Thomas, Robert and William and/or Gilbane, Inc. have been damaged as a result of Federal's breach of its obligation to pay the legal fees and costs incurred by or on behalf of Choquette, Thomas, Robert and William in defending the Underlying Claims.

## COUNT III
## R.I. GEN. LAWS § 9-1-33

76. Gilbane repeats and incorporates by reference the allegations set forth in paragraphs 1 through 75.

77. Federal wrongfully and in bad faith has refused to advance or delayed in advancing to Choquette, Thomas, Robert and William and/or Gilbane, Inc. Defense Costs incurred by or on behalf of Choquette, Thomas, Robert and William in defending the Underlying Claims when Federal knows or should know there is no reasonable basis for its refusal to advance or delay in advancing those Defense Costs.

78. Federal wrongfully and in bad faith has reserved its rights to disclaim coverage for the Underlying Claims based on grounds for which it knows or should know there is no reasonable basis.

79. Gilbane has been damaged as a result of Federal's bad faith.

## COUNT IV
### EQUITABLE ESTOPPEL

80. Gilbane repeats and incorporates by reference the allegations set forth in paragraphs 1 through 79.

81. Before it purchased D&O coverage from Federal, Gilbane, Inc. was provided with written materials on behalf of Federal that stated that the “Insured v. Insured” exclusion usually does not apply to shareholder derivative claims.

82. Federal knew or should have known that Gilbane, Inc. was a closely held corporation and that several of its shareholders served or had served as officers or directors of the company or affiliated companies, but neither Federal nor anyone acting on its behalf advised Gilbane, Inc. that the “Insured v. Insured” exclusion might arguably have broader application in this situation.

83. In electing to purchase D&O coverage, which it had never purchased before, Gilbane, Inc. reasonably relied on the written materials with which it was provided on behalf of Federal, including the representation in those materials that the “Insured v. Insured” exclusion usually does not bar coverage for shareholder derivative claims.

84. Gilbane has suffered detriment and prejudice as a result of Gilbane, Inc.’s reliance on the written materials with which it was provided on behalf of Federal, including the representation in those materials that the “Insured v. Insured” exclusion usually does not bar coverage for shareholder derivative claims.

## COUNT V
### NEGLIGENT MISREPRESENTATION

85. Gilbane repeats and incorporates by reference the allegations set forth in paragraphs 1 through 84.

86. Before it purchased D&O coverage from Federal, Gilbane, Inc. was provided with written materials on behalf of Federal that stated that the “Insured v. Insured” exclusion usually does not apply to shareholder derivative claims.

87. Federal knew or should have known that Gilbane, Inc. was a closely held corporation and that several of the shareholders served or had served as officers or directors of the company or affiliated companies, but neither Federal nor anyone acting on its behalf advised Gilbane, Inc. that the "Insured v. Insured" exclusion might arguably have broader application in this situation.

88. The written materials with which Gilbane, Inc. was provided on Federal's behalf were intended to induce Gilbane, Inc. to purchase a D&O policy.

89. In electing to purchase D&O coverage, which it had never purchased before, Gilbane, Inc. reasonably relied on the written materials with which it was provided on behalf of Federal, including the representation in those materials that the "Insured v. Insured" exclusion usually does not bar coverage for shareholder derivative claims..

90. Gilbane has been damaged as a result of Federal's negligent misrepresentation.

WHEREFORE, Gilbane prays judgment as follows:

(1) On its first claim for relief, a judgment declaring that the Policy covers the Underlying Claims and that Federal therefore is obligated to indemnify Choquette, Thomas, Robert and William for "Loss" incurred by them on account of those claims, including but not limited to "Defense Costs";

(2) On its second claim for relief, the actual and consequential damages suffered by Gilbane as a result of Federal's breach of its obligations under the Policy;

(3) On its third claim for relief, the actual and consequential damages suffered by Gilbane as a result of Federal's bad faith, punitive damages, and its attorney's fees and costs;

(4) On its fourth claim for relief, an order estopping Federal from relying on the "Insured v. Insured" exclusion in disclaiming coverage for any shareholder derivative claims asserted by Richard;

(5) On its fifth claim for relief, the actual and consequential damages suffered by Gilbane as a result of its reliance on the Federal's negligent misrepresentations;

(6) the attorney's fees and costs incurred by Gilbane in prosecuting this action, including the attorney's fees and costs incurred by Gilbane in defending against Federal's declaratory judgment complaint; and

(7) All such other relief as this Court deems just and proper.

**JURY DEMAND**

Defendants/plaintiffs-in-counterclaim Gilbane, Inc., Gilbane Properties, Inc., Gilbane Building Company, Paul Choquette, Thomas F. Gilbane Jr., Robert V. Gilbane and William J. Gilbane, Jr. demand a trial by jury on all of their counterclaims so triable.

GILBANE, INC., GILBANE PROPERTIES, INC.
GILBANE BUILDING COMPANY, PAUL CHOQUTTE,
THOMAS F. GILBANE JR., ROBERT V. GILBANE and
WILLIAM J. GILBANE, JR.

By their attorneys,

/s/John T. Walsh, Jr.
Bar No. #0483
jwalsh@hcc-law.com
Higgins, Cavanagh & Cooney, LLP
The Hay Building, 4th Floor
123 Dyer Street
Providence, RI 02903
(401) 272-3500
(401) 273-8780 (fax)

Of counsel:

Steven L. Schreckinger (BBO #447100)
sschreckinger@lynchbrewer.com
Anne Robbins (BBO #561968)
arobbins@lynchbrewer.com
LYNCH, BREWER, HOFFMAN & FINK LLP
101 Federal Street, 22nd Floor
Boston, MA 02110-1800
(617) 951-0800
(617) 951-0811 (fax)

CERTIFICATE OF SERVICE

I, John T. Walsh, Jr., certify that on the 15th day of May, 2007, a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record received notice of the filing of this document electronically from the United States District Court for the District of Rhode Island:

Stephen J. Reid, Esq.
Blish & Cavanagh
30 Exchange Terrace
Providence, RI 02903
sjr@blishcavlaw.com

/s/ John T. Walsh, Jr.