LITTLE MEDEIROS KINDER
BULMAN & WHITNEY PC

*Attorneys*

Christopher H. Little *
Matthew F. Medeiros *
Daniel K. Kinder *
John E. Bulman *
Christopher C. Whitney *
Henry R. Estes *
George H. Rinaldi *
Scott K. Pomeroy
Joseph P. Quinn *
Beatrice Beltran Farr *
Adam J. Chandler *

John D. Deacon, Jr. *
*Of Counsel*

William R. Powers III
(1931-1998)
Thomas C. Keeney
(1946-1999)

Also admitted in
* Massachusetts

September 21, 2004

Paul J. Choquette, Jr.
Director
Gilbane, Inc.
7 Jackson Walkway
Providence, RI 02906

Franz Colloredo-Mansfeld
Director
Gilbane, Inc.
7 Jackson Walkway
Providence, RI 02906

Robert V. Gilbane
Director
Gilbane, Inc.
7 Jackson Walkway
Providence, RI 02906

Vincent M. O'Reilly
Director
Gilbane, Inc.
7 Jackson Walkway
Providence, RI 02906

Thomas F. Gilbane
Director
Gilbane, Inc.
7 Jackson Walkway
Providence, RI 02906

William A. Petzold
Director
Gilbane, Inc.
7 Jackson Walkway
Providence, RI 02906

William J. Gilbane, Jr.
Director
Gilbane, Inc.
7 Jackson Walkway
Providence, RI 02906

Ronald L. Skates
Director
Gilbane, Inc.
7 Jackson Walkway
Providence, RI 02906

Thomas A. Steele
Director
Gilbane, Inc.
7 Jackson Walkway
Providence, RI 02906

Re: Thomas F. Gilbane, Jr. and Robert V. Gilbane

Dear Members of the Board of Directors:

Please be advised that we represent Richard T. Gilbane in his capacity as a shareholder of Gilbane, Inc. (the "Company"). He has been a shareholder of the Company at all times material hereto.

72 Pine Street Providence, RI 02903 (401) 272-8080 fax (401) 521-3555
43 Thorndike Street Cambridge, MA 02141 (617) 494-8070

Demand is hereby made on behalf of Richard T. Gilbane that the Company institute legal proceedings against Thomas F. Gilbane, Jr. and Robert V. Gilbane to recover the net death benefit proceeds of $3,350,202.11[1] plus interest paid to them and to James Gilbane from the Split Dollar Insurance Policy on the life of their mother, Jean Gilbane (the "Jean Gilbane Split Dollar Policy"), if that amount is not immediately paid to the Company. These individuals have clearly breached their fiduciary duties to the Company, as well as to other shareholders, with respect to such Policy and the $3,350,202.11[1] plus interest which rightfully belongs to the Company.

There never was a proper purpose for the Policy. At a November 7, 1994 Board of Directors meeting of the Company (then named Gilbane Building Company), a memorandum (attached hereto) was distributed which made clear the illicit purpose they had for the Jean Gilbane Split Dollar Policy. It states that:

> Following the agreed to plan that <u>all stock in Gilbane Building Company should be owned by only those actively working for the company</u>, the company has agreed to a split dollar insurance policy with Thomas, Robert and James Gilbane. The proceeds of this policy will be used to purchase stock currently held in trust of non-working shareholders at the time of Jean Gilbane's death … .
>
> This policy will facilitate the purchase of non-working shareholder's stock. This will allow <u>us</u> to <u>require</u> non-working members <u>of the ESOP to have to sell their stock upon severance of employment</u> and minimize the need for the company to purchase the stock. (Emphasis added.)

In the words of an e-mail sent by Jean Cole to her brother Thomas on December 6, 2002, the year that their mother died, the conduct of Thomas, Robert and James with respect to the Jean Gilbane Split Dollar Policy was an "incredible betrayal." She said in that e-mail that:

> The six of us [children of Jean Gilbane] were equal owners of the company. Yes, you work for the company and you are compensated in accordance with your contributions to the company, but that should not be confused with who owns the company … It was never our parents' intention that you three should benefit in ways so much greater than

[1] Less any verified amounts which they personally paid in premiums for the Policy.

> the other three ... You three have manipulated and corrupted our parents' intentions.

The conduct of Thomas and Robert Gilbane, in using the Company's funds to pay for premiums for the Jean Gilbane Split Dollar Policy so that they and James Gilbane would personally receive the death benefit when she died and then either keep the money or use that money to purchase their siblings' stock for themselves, was a blatant breach of the duties they owed to the Company on several bases, including but not limited to the following:

1. There was never an "agreed to plan" by the shareholders that "all stock in Gilbane Building Company should be owned only by those actively working for the Company... ." Thomas and Robert Gilbane improperly schemed and conspired with others to eliminate all non-working shareholders from ownership of the Company, but, such a "plan" had never been agreed to by the shareholders.[2]

2. A management shareholder group cannot perpetuate its own ownership and control through the use of corporate funds. This is precisely what Thomas and Robert Gilbane did when they caused the corporation, in a self-interested transaction, to pay a substantial portion of the premiums on the Jean Gilbane Split Dollar Policy. This scheme to misuse corporate funds in order to perpetuate the control and ownership of the Company by the Management Shareholders constituted a breach of fiduciary duties. The Company is entitled to more than merely a return of the amounts paid out by it or the premiums in this situation. It is entitled to the entire amount of $3,350,202.11,[3] plus interest which Thomas and Robert Gilbane (as well as James Gilbane) were unjustly enriched with, as a result of their breach of fiduciary duties.

3. The Jean Gilbane Split Dollar Policy also constituted a usurpation or diversion of a corporate opportunity. The stated purpose in using Company funds to pay the premiums, was to use the proceeds of the Policy to purchase the stock, currently held in trust, of non-working shareholders. But there could be no legitimate

---

[2] As of October 3, 1995, an attorney representing non-working shareholders, Richard Kelly, of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., even suggested that if no agreement could be reached on a cash and property buy-out then "an effort ought to be undertaken to sell the Company as a whole or in parts and distribute the net proceeds to the shareholders."

[3] Less any verified amounts which they personally paid in premiums for the Policy.

purpose in using Company funds to pay premiums so that this small, select group of Thomas, Robert and James Gilbane would be able to use the proceeds of the policy themselves to purchase the stock. If the Company was properly seeking to fund the redemption of the stock of the non-working shareholders through insurance, it could have insured the life of Jean Gilbane itself, so that it was the Company which received the proceeds of the policy and redeemed the stock. It was the Company and not Thomas, Robert and James Gilbane, which should have been given the opportunity to be able to purchase the stock, or keep the $3,350,202.11[4] if the non-working shareholders did not sell their stock back. Therefore, such conduct constituted a breach of the fiduciary duties of Thomas and Robert Gilbane to the Company.

4. The Memorandum for the November 7, 1994 Board meeting speaks of using the death benefit from the Jean Gilbane Split Dollar Policy to "allow us [presumably Thomas, Robert and James Gilbane and others] to require non-working members of the ESOP to have to sell their stock upon severance of employment and minimize the need for the company to purchase this stock." (Emphasis added.) Richard T. Gilbane disputes that using Company funds to allow these particular individuals to obtain such stock for themselves was ever proper, even in the context of a planned ESOP. Since there was no ESOP actually established at that time, the stated use of the funds for that purpose was spurious on its face. Even though an ESOP was contemplated at that time, once it was rejected by the shareholders, this stated purpose could not be valid and Thomas and Robert Gilbane had a duty to turn over the net death benefit proceeds to the Company in 2002, upon receipt of those proceeds.

There can be no argument made that the Jean Gilbane Split Dollar Policy was merely a "perk" of some kind to certain working shareholders. The purpose of the policy was explicitly set forth at the November 7, 1994 Board Meeting. That purpose was an improper one of using Company funds to eliminate non-working shareholders and obtaining their stock for Thomas, Robert and James Gilbane.

The conduct of Thomas and Robert Gilbane with respect to the Jean Gilbane Split Dollar Policy constitutes a breach of the fiduciary duties not only owed to the Company, but to the other shareholders as well. Therefore, upon the Company's receipt of the proceeds from the death benefit from the Jean Gilbane Split Dollar Policy, Richard T.

---

[4] Less any verified amounts which they personally paid in premiums for the Policy.

Gilbane demands that such proceeds be used to fund a special dividend for all shareholders of the Company.

The Board of Directors have known of the Jean Gilbane Split Dollar Policy and the usurpation of the death benefit proceeds by Thomas and Robert Gilbane since their receipt of those proceeds in 2002. Richard T. Gilbane demands that action be taken to secure the payment of those proceeds for the Company within thirty days from the date of this letter, and that failing a voluntary return, the Company immediately institute legal action to obtain such proceeds from Thomas and Robert Gilbane.

We are further requesting a formal response to this letter from your counsel within the said thirty days.

Sincerely yours,

Matthew F. Medeiros

Of Counsel
Kenneth A. Sweder, Esquire
Sweder & Ross LLP
21 Custom House Street
Suite 300
Boston, Massachusetts 02110

Enclosure
cc: Richard T. Gilbane

F:\MFM\GILBANE\Demand to Board of Directors.doc

**Pat Eason**

---

**From:** Robbins, Anne [arobbins@lynchbrewer.com]
**Sent:** Monday, May 14, 2007 3:20 PM
**To:** John Walsh
**Subject:** RE: Federal Insurance Co. v. Gilbane: Filing of Answer & Counterclaims
**Attachments:** 257826_2.DOC; Gilbane_Counterclaim_ExA.pdf; Gilbane_Counterclaim_ExB.pdf; Gilbane_Counterclaim_ExC.pdf; Gilbane_Counterclaim_ExD.pdf

Thanks, John.

Attached is the final Answer & Counterclaims (in Word), along with Exhibits A through D (in pdf). Please put the Answer & Counterclaims in correct format for Rhode Island and file. I'm in for the rest of the day today and all day tomorrow if you have any questions. Thanks again,

Anne

Anne Robbins
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110-1800
(617) 951-1848
(617) 951-0811 (fax)
arobbins@lynchbrewer.com
www.lbhs.com

---

**From:** John Walsh [mailto:jwalsh@hcc-law.com]
**Sent:** Monday, May 14, 2007 3:00 PM
**To:** Robbins, Anne
**Subject:** RE: Federal Insurance Co. v. Gilbane: Filing of Answer & Counterclaims

Anne:

I did receive the pro hac vice forms for you and Steve and they have been filed with the Federal Court.

John

John T. Walsh, Jr.
Higgins, Cavanagh & Cooney, LLP
123 Dyer Street
Providence, RI 02903
Tel: 401-272-3500
Fax: 401-273-8780
jwalsh@hcc-law.com

---

**From:** Robbins, Anne [mailto:arobbins@lynchbrewer.com]
**Sent:** Mon 5/14/2007 10:41 AM
**To:** John Walsh
**Cc:** Schreckinger, Steven L.; Gordon, Brad A.

**Subject:** Federal Insurance Co. v. Gilbane: Filing of Answer & Counterclaims

John,

Just a quick update on where things stand in regard to the Gilbane Answer & Counterclaims, which we will be asking you to file tomorrow. The initial draft has been reviewed by the client, and a revised draft reflecting the client comments was sent to the client on Friday. The counterclaims will have 4 exhibits, which I can email in pdf form when I email the complaint.

Please let me know if there's anything more you need from us in order to file. Also, if you could confirm that you received the forms to have Steve and me admitted pro hac vice, I would appreciate it.

Thanks,

Anne

Anne Robbins
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110-1800
(617) 951-1848
(617) 951-0811 (fax)
arobbins@lynchbrewer.com
www.lbhs.com