**SWEDER & ROSS LLP**
**21 Custom House Street, Suite 300**
**Boston, Massachusetts 02110**

TELEPHONE: 617.646.4466
FACSIMILE: 617.646.4470

For Settlement Purposes Only
Not to Be Used for Any Other Purpose

December 3, 2004

Mark W. Freel, Esquire
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Re: Gilbane, Inc.

Dear Mark:

In accordance with our discussions concerning the Tolling Agreement, I am setting forth in this letter, an outline of major concerns of my client, Richard T. Gilbane, with respect to Gilbane, Inc. (Gilbane or the Company), Gilbane Building Company and Gilbane Properties, Inc. (GPI), and the conduct of various of their officers and directors.

This outline does not in any way, bind or limit Richard Gilbane with respect to any lawsuit he may file. Any lawsuit, if filed, may contain some or all of the concerns outlined as well as other concerns.

This letter and the outline contained herein are sent to you as part of settlement negotiations and are, therefore, privileged. They are not to be used or disclosed to any person other than in connection with these settlement negotiations. This letter is further specifically protected by Rule 408 of the Rhode Island Rules of Evidence.

The Management Shareholders have begun to move away from their decade long efforts to freeze out all non-working family members from ownership of Gilbane stock. This shift, such as it is, has resulted largely from my client's efforts and diligence. Furthermore, these recent efforts do not in any way go far enough to move the Company and how it is run from one which exists largely for the benefit of its Management Shareholders, to one in which all action is taken in the best interests of all of the shareholders. Moreover, these efforts do not negate past misconduct and damages suffered by Richard T. Gilbane and other shareholders and his concerns regarding future misconduct, which include, but are not limited to the following:

A. <u>DIVIDENDS</u>

1. A failure to have declared reasonable and adequate dividends for at least the last ten years.

2. A failure to have declared any dividends on the earnings and operations of GPI for at least the last ten years (even though a policy had been adopted to declare dividends on the earnings of the <u>entire</u> company, including the real estate operations).

3. A failure to have declared a dividend or otherwise made a distribution of the surplus of the cash reserves, which are unnecessary for the business operations and security of the Company.

B. <u>THE REDEMPTION BY-LAWS AND BUYOUTS</u>

1. There has been a continuing misrepresentation that the book value (plus the fair market value of the real estate) and the actual fair value of the stock are roughly equal.

2. The 2001 redemption By-Law was changed in violation of prior representations made that the Company would not seek to change the By-law formula to decrease the amount the shareholders could receive for redemption of their shares.

3. The 2001 redemption By-law was adopted without adequate information and disclosure being given concerning the effect it would have on redemption prices.

4. The amounts offered to redeem Richard T. Gilbane's shares in the past did not even represent the amount to which he was entitled under the then existing By-laws.

5. Richard T. Gilbane and other shareholders are entitled, in view of the above, and on other bases, to redeem their shares at eighty-five percent (85%) of not the book value, but the fair value of Gilbane stock.

C. <u>ACCESS TO INFORMATION AND THE PENDING LAWSUIT</u>

1. Richard T. Gilbane has consistently been denied access to corporate records and information to which he is entitled. For example, some of the records and information he has sought and been denied, includes:

a. Access to the agreements, operating agreements, Board minutes, and other documents, evidencing the policy, agreements and

procedures for distributions by GPI; the record of all such distributions made; and the records verifying that such distributions have been made in accordance with such policies and agreements.

b. Access to the "Blue Book," as well as to comprehensive financial external and internal financial reports and tax returns, and benchmarking reports and CFMA reports, which Richard T. Gilbane can review, as a shareholder, to determine, inter alia, whether the profit being made and reported by the Company appears to be appropriate in view of the Company's revenues and financial condition.

c. Access to records and information concerning the total direct and indirect compensation paid to the officers of the Company, and the officers of Gilbane Building Company and GPI.

2. The Company initiated a lawsuit against Richard T. Gilbane to prevent him from obtaining the access to records and information to which he is entitled as a shareholder.

3. Richard T. Gilbane is entitled to a ten percent (10%) penalty of the fair value of his shares and to costs, as a result of the failure to provide him with access to records and information, as set forth in the Counterclaim in the pending lawsuit mentioned above.

D. <u>THE FREEZE-OUT OF RICHARD T. GILBANE FROM BEING A CORPORATE OFFICER AND DIRECTOR</u>

Richard T. Gilbane has not been allowed to continue on the Board of Directors of Gilbane or Gilbane Building Company because of his interest in obtaining access to and having certain information revealed to all of the shareholders.

E. <u>THE JEAN GILBANE SPLIT DOLLAR INSURANCE POLICY</u>

See Demand.

F. <u>THE DISTRIBUTIONS FROM GPI TO ROBERT GILBANE</u>

Robert Gilbane has received compensation which far exceeds the compensation of the principal officers of the Company when his equity participations in GPI are considered. Richard T. Gilbane challenges such compensation on the following bases:

- Robert Gilbane was already an officer, director and shareholder of the Company when the real estate operations began and the equity participation incentives were not necessary to attract him to join the Company;

- Robert Gilbane initially invested no capital in the real estate operations of the Company;

- Robert Gilbane has never personally guaranteed any loans of GPI;

- Robert Gilbane has assumed virtually no personal financial risk which he shared with GPI;

- Robert Gilbane did not invest any "sweat equity" into the real estate operations any more than any other officer or director invested "sweat equity" into the Company;

- Robert Gilbane has not worked any harder than the other major principal officers of the Company;

- Robert Gilbane was already incentivized by the ownership of Gilbane stock in the same way as were other principal officers;

- The sponsorship and organizational support by the Company meant that GPI was not a start-up and Robert Gilbane does not deserve to be treated as if he was a creator of GPI.

Based upon the above, there appears to be no justifiable basis for Robert Gilbane having received the percentage participation interests and distributions he has received. Richard T. Gilbane understands that there have been Arthur Andersen, KPMG, and other studies commissioned by the Company with respect to the compensation of the GPI principal officers, including Robert Gilbane, but these studies did not adequately consider or assess the factors above.

Even assuming that the granting of the extraordinary percentage of participation interests and distributions to Robert Gilbane could be appropriate, which Richard T.

Gilbane contests, the following concerns remain with respect to such participation interests and distributions:

- Have they been in excess of those actually permitted by the GPI Incentive Compensation Program?

- Have operating costs been properly taken into account before such percentage interests and distributions were calculated and paid?

- Have payments been made preferentially to Robert Gilbane and others and been given a priority given before GPI itself received and booked profits for distribution?

- Have the participation interests and distributions made to Robert Gilbane been properly audited and reported to Gilbane and to the other shareholders?

G. <u>THE TREATMENT OF RICHARD T. GILBANE WITH RESPECT TO THE SUBCHAPTER S ELECTION</u>

1. The Company and its officers have unfairly and untruthfully vilified and slandered Richard T. Gilbane to the other shareholders with respect to the Subchapter S Election, in an effort to further isolate and freeze Richard T. Gilbane out of participation in corporate affairs.

2. Paul Choquette has twice told Richard T. Gilbane that he did the shareholders a favor by refusing to consent to the Subchapter S election. However, Mr. Choquette appears to be continuing to tell the other shareholders something quite to the contrary.

3. At this point in time, Richard T. Gilbane does not know if the Company still wants to do a Subchapter S election in view of: the current tax rate on dividends which is unlikely to be increased; and the limit on the number of shareholders in a Subchapter S corporation.

4. Further, if the Company does want to pursue the Subchapter S election, is it willing to provide a certification or otherwise satisfy Richard T. Gilbane that a Subchapter S election will not adversely affect current shareholder value, the price that the Company would pay to redeem shares, or the amounts the Company would pay out in distributions equivalent to dividends?

5. Ever since Richard T. Gilbane refused to consent to the Subchapter S election he has been excluded from and frozen out of shareholder events transparently labeled as "Family Retreats" or "Outings."

Please call to schedule the initial meeting involving yourself, Paul Choquette, Richard T. Gilbane and myself.

Very truly yours,

Ken Sweder

Kenneth A. Sweder

KAS:mm
cc: Richard T. Gilbane
Matthew F. Medeiros, Esquire