STATE OF RHODE ISLAND
PROVIDENCE, SC

SUPERIOR COURT

RICHARD T. GILBANE,
*Plaintiff,*
v.

GILBANE, INC.;
GILBANE PROPERTIES, INC.;
PAUL J. CHOQUETTE;
ROBERT V. GILBANE;
THOMAS F. GILBANE JR; and
WILLIAM J. GILBANE, JR.,
*Defendants.*

C.A. No. 05-0612

# COMPLAINT

## I. INTRODUCTION

This is an action which Richard T. Gilbane ("Richard") brings against his brothers and cousins who are the management shareholders of a venerable and fine, family-owned company, Gilbane, Inc., for direct and derivative claims for breaches of fiduciary duties.

Of the shareholders who are not now in management positions, Richard is the only one who has worked in top management and as a member of the Board of Directors, and he has been virtually the only nonmanagement shareholder to understand, protest and contest the series of acts and pattern of oppressive conduct of the management shareholder group to disadvantage and freeze-out non-employee shareholders, including Richard, by plotting and taking action to: eliminate their ownership in the company; failing to provide, at first any, and then an adequate and proper dividend; and usurping for themselves or some of them, the assets and opportunities of the company. The management shareholders, for the most part, have successfully been able to falsely paint Richard to the other family shareholders as someone pursuing only his own interests, as opposed to someone who has sought information and taken action largely for the benefit of all non-employee shareholders.

## II. PARTIES

1. Plaintiff Richard is a Rhode Island resident with a residence address in Providence, Rhode Island.

2. Defendant Gilbane, Inc. f/k/a Gilbane Building Company ("Gilbane" or the "Company") is a corporation organized and existing under the laws of Rhode Island, having a principal place of business at 7 Jackson Walkway, Providence, Rhode Island. The Company, along with its subsidiaries and a number of affiliate companies, is engaged in the business of facilities consulting, construction and real estate. At all times relevant hereto, the Company has acted as a program, project and construction manager and/or general contractor on multi-million dollar construction projects throughout the United States, and since its inception has developed, owned, provided advisory services for, and managed various real estate projects. The Company has been a market and industry leader in providing a diverse breadth of professional contracting and turnkey services for the public, private, and non-profit sectors. Gilbane is a close corporation under the laws of Rhode Island.

3. Defendant Gilbane Properties, Inc. ("GPI") is a wholly-owned subsidiary of Gilbane. GPI was formed in 1970 and took over much of the real estate development business and property management business which Gilbane had been engaged in for decades. GPI has continued in the real estate development and property management business.

4. Defendant Paul J. Choquette ("Choquette") is a shareholder of the Company and is, upon information and belief, the Chairman of the Board of Directors of the Company. Upon information and belief, Choquette is a Rhode Island resident.

5. Defendant Robert V. Gilbane ("Robert") is a shareholder and member of the Board of Directors of the Company . Upon information and belief, Robert is also the President of GPI. Upon information and belief, Robert is a Rhode Island resident.

6. Defendant Thomas F. Gilbane, Jr. ("Thomas") is a shareholder and member of the Board of Directors of the Company and is Chairman and Chief Executive Officer of Gilbane Building Company, a wholly-owned subsidiary of Gilbane. Upon information and belief, Thomas is a Rhode Island resident.

7. Defendant William J. Gilbane, Jr. ("William") is a shareholder and member of the Board of Directors of the Company. Upon information and belief, William is the President and Chief Operating Officer of Gilbane Building Company. Upon information and belief, William is a Rhode Island resident.

8. At all times material hereto, it is alleged upon information and belief, the individual defendants, Choquette, Robert, Thomas and William (collectively, the "Management Shareholders") acted in concert with respect to the allegations herein, and have taken the actions and made the statements and representations alleged, in their capacities as officers and directors of the Company and of GPI.

## III. <u>JURISDICTION AND VENUE</u>

9. The Court has subject matter jurisdiction over this action because plaintiff seeks injunctive relief and damages in excess of the statutory minimal amount.

10. The Court has personal jurisdiction over the defendants because each defendant resides and/or regularly conducts business and/or has regular contacts within Rhode Island. In addition, many of the acts that form the subject of this Complaint occurred in Rhode Island.

## IV. DERIVATIVE ACTION ALLEGATIONS

(Compliance with R.I. Super. Ct. R. Civ. P. 23.1)

11. Richard brings this action directly in his own right and pursuant to R. I. Super. Ct. R. Civ. P. 23.1 as a derivative action on behalf of and in the right of the Company.

12. Richard is now, and was at the time of the actions of which he complains, a minority shareholder of the Company. Richard currently owns and controls approximately 16% of all of the issued shares. Richard will fairly and adequately represent the interests of the Company's similarly situated minority shareholders in enforcing the rights and interests of the Company and GPI.

13. Richard duly made demands upon the Directors of the Company on or about September 21, 2004, with respect to Counts II through IV, and subsequently upon the Company and GPI with respect to Counts V through VII in accordance with the requirements of R.I. Super. Ct. R. Civ. P. 23.1. Such demands have been refused with respect to the derivative claims asserted herein.

## V. FACTUAL BACKGROUND

(Facts pertinent to all counts)

### A. Stock Ownership of Richard T. Gilbane.

14. In 1908, the Gilbane Building Company was incorporated.

15. Upon information and belief, effective January 1998, Gilbane Building Company changed its name to Gilbane, Inc. (the "Company" or "Gilbane"). The Company currently has two wholly-owned operating companies: Gilbane Building Company and GPI, and a number of affiliate companies.

16. Since its inception, the Company has been privately held. The current owners are all lineal descendants of William H. Gilbane. Historically, some of the shareholders were employees of the Company and others were not. As a strictly family-owned Company, the non-employee shareholders have always placed a high degree of trust in the family members running the business to protect their interests and maintain the highest degree of loyalty to them.

17. Richard, the son of Thomas F. Gilbane, became a shareholder in the Company in his infancy in 1951. He worked for the Company growing up, continued working at Gilbane during and after college and upon earning his graduate degree in civil engineering from MIT. Richard continued to work for the Company and/or its subsidiaries and affiliates throughout most of his adulthood, until June of 1992.

18. Richard no longer works for the Company and is not now an officer or director of it or any of its subsidiaries. He remains, however, on information and belief the largest individual shareholder of the Company with ownership of 15.77% of the Class A Voting Shares and 14.85% of the Class B Shares.

**B. The Misconduct Of The Management Shareholders With Respect To The Jean Gilbane Split Dollar Insurance Policy.**

19. The Management Shareholders, each of whom earns enormous amounts of money from the Company, have persistently sought to freeze-out the nonmanagement shareholders' ownership and voting control of the Company.

20. At a November 7, 1994 Board of Directors meeting of the Company, a memorandum was distributed which referenced an "agreed to plan that all stock in Gilbane Building Company should be owned by only those actively working for the company…"

21. The November 7, 1994 memorandum was issued by the Management Shareholders for the purpose of causing the Board of Directors to approve the payment of a

substantial portion of the proceeds of a split dollar life insurance policy on the life of Jean Gilbane, which provided net death benefits in excess of $3,350,000.00 (the "Jean Gilbane Split Dollar Policy"). Those net death benefits were payable only to Thomas, Robert and James Gilbane on the death of Jean Gilbane, their mother (and also the mother of Richard). Nevertheless, the Management Shareholders caused the Company to pay a substantial portion of the premiums for such policy.

22. The Memorandum for the November 7, 1994 Board meeting speaks of using the death benefit from the Jean Gilbane Split Dollar Policy to "allow us to require non-employee members of the ESOP to have to sell their stock upon severance of employment and minimize the need for the company to purchase this stock." (Emphasis added.) Using Company funds to allow these particular individuals to obtain such stock for themselves was never proper, even in the context of a planned ESOP.

23. The conduct of the Management Shareholders, in using the Company's funds to pay premiums for the Jean Gilbane Split Dollar Policy so that Thomas, Robert and James Gilbane would personally use the death benefit proceeds when she died to purchase their siblings' stock for themselves, was a breach of the duties they owed to the Company and to the nonmanagement shareholders including Richard.

24. The Management Shareholders sought, through this scheme, to perpetuate their own ownership and control through the use of corporate funds by causing the corporation, in a self-interested transaction, to pay a substantial portion of the premiums on the Jean Gilbane Split Dollar Policy. This scheme to misuse corporate funds in order to perpetuate the control and ownership of the Company by the Management Shareholders constituted a breach of fiduciary duties to the Company and to the nonmanagement shareholders, including Richard.

25. Jean Gilbane died in 2002 and death proceeds in the amount of $3,350,202.11 were paid to Thomas, Robert and James Gilbane, who have not purchased stock from their siblings with the proceeds nor did they return such proceeds to the Company. The Company has refused to seek a return of such amount from them.

26. The Company is entitled to more than merely a return of the amounts paid out by it for the premiums in this situation. It is entitled to the entire amount of $3,350,202.11 plus interest, which Thomas and Robert Gilbane (as well as James Gilbane) were unjustly enriched with, as a result of their breach of fiduciary duties.

27. The Jean Gilbane Split Dollar Policy also constituted a usurpation or diversion of a corporate opportunity and a diversion of corporate assets. The stated purpose in using Company funds to pay the premiums was to use the proceeds of the Policy to purchase the stock of non-employee shareholders. But there could be no legitimate purpose in using Company funds to pay premiums so that this small, select group of Thomas, Robert and James Gilbane would be able to use the proceeds of the policy themselves to purchase the stock. If the Company were properly seeking to fund the redemption of the stock of the non-employee shareholders through insurance, it could have insured the life of Jean Gilbane itself, so that it was the Company which received the proceeds of the policy and redeemed the stock. It was the Company and not Thomas, Robert and James Gilbane, which should have been given the opportunity to be able to purchase the stock, or keep the $3,350,202.11 if the non-employee shareholders did not sell their stock.

**C. The Continuing Freeze-out Efforts And Breaches of Fiduciary Duties With Respect to Dividends.**

28. The ESOP strategy failed in October 1995, largely because the Management Shareholders could not convince the non-employee shareholders to accept a substantially undervalued offer for their shares.

29. After the failure of the ESOP, the Management Shareholders continued to plan and scheme to freeze-out all of the nonmanagement shareholders and obtain their stock for less than fair value.

30. It is alleged on information and belief that the Management Shareholders repeatedly met with the Company's auditors, Arthur Andersen ("AA"), in 1999 to achieve this plan. AA developed a series of memoranda to achieve the freeze-out objectives of the Management Shareholders which were labeled as "Strictly Confidential" and were not disclosed to the other shareholders. The Management Shareholders, in breach of their fiduciary duties, caused Gilbane to pay for this work of AA which was, in essence, primarily for their own benefit, rather than for the benefit of the Company.

31. AA's efforts culminated in a November 29, 2000 proposal for the Company to elect a Subchapter S tax status whereby the Company would distribute one hundred percent (100%) of its net income to its shareholders annually, which would also: provide a "methodology for Management Shareholders to increase their ownership and control of the company;" secure liquidity for the nonmanaging shareholders; and obtain certain other benefits of a Subchapter S election.

32. The Management Shareholders, however, never disclosed the AA proposal to the nonmanagement shareholders and proposed to the shareholders a Subchapter S election with a ten percent (10%) dividend on only the earnings of the Gilbane Building Company subsidiary rather than a 100% dividend based on the net earnings of Gilbane.

33. The Management Shareholders have used their power over whether or not to declare dividends, how much of a dividend, and when it is paid, as one of their weapons in their pattern of oppression and freeze-out.

34. In an effort to coerce the non-employee shareholders to sell out their shares to the ESOP for amounts which were below any acceptable amounts, the Management Shareholders took the position that management would not pay a dividend if the ESOP did not proceed. In other words, if the non-employee shareholders wanted to get some value for their shares, they had to sell out to the ESOP, because they were not going to receive any value through dividends.

35. In that time period, Richard suggested to Choquette that the money earmarked for the purchase of shares for the ESOP be used to pay a dividend. Choquette capriciously said that the Company would never do that. The Management Shareholders apparently decided, on an unreasonable and bad faith basis, not to pay dividends so that the Company could eliminate the non-employee shareholders.

36. A small dividend was finally issued by the Company for the first time for fiscal 1996 mostly due to the persistence of Richard in seeking a dividend for all shareholders. When the dividend checks finally went out in 1997, Richard's brother, James, e-mailed him saying, "Thanks to your consistent and relentless push for GB Co to pay out dividends, we finally see some results."

37. The dividends paid were unreasonably small and only paid from the after-tax net income of Gilbane Building Company, not GPI. It is alleged on information and belief that the Management Shareholders caused the Company to fail to pay a larger dividend in bad faith and abused their discretion in doing so in an effort to induce the non-employee shareholders to sell their stock to the Management Shareholders.

38. In an effort to coerce Richard to redeem his shares in the 1999 time period, Choquette told Richard that Richard should sell his shares since Choquette didn't believe the payment of dividends would continue once the other non-employee shareholders had sold their shares.

39. After Richard's objection in December of 2001 to the Subchapter S election, the Management Shareholders, as set forth above, blatantly used the failure to declare a dividend as a means of coercion and oppression.

40. The Management Shareholders caused the Company to suspend the dividend for 2001, at a time when it had more than sufficient cash to pay the dividend, in order to oppress Richard and try to coerce him to agree to the Subchapter S Election.

41. Although a dividend payment was restored in 2003 for fiscal 2002, and there was even a "catch-up" payment made for fiscal 2001, the Management Shareholders have acted in bad faith in breach of their duty of loyalty to the other shareholders, and have abused their discretion in first failing to have the Company declare dividends, and then in keeping such dividend payments unreasonably low. Furthermore, the Management Shareholders have acted in bad faith, in breach of their duty of loyalty to the other shareholders, and have abused their discretion in failing to have any dividend declared for the earnings and operations of GPI.

42. The Management Shareholders have maintained an extraordinarily large cash reserve which is, according to the Company's own admission, over two and one-half times greater than the average for comparable firms. The Company's net worth is, according to its own admission, approximately four times greater than the average firm of similar size. Although the Company claims that it has good business reasons for maintaining such a financial framework, the history of oppression and freeze-out with respect to the failure to pay appropriate dividends shows that the bloated cash and asset positions of the Company have resulted from a lack of good faith and loyalty and an abuse of discretion on the part of the Management Shareholders.

**D. The Misconduct of the Management Shareholders With Respect to Robert V. Gilbane's Total Compensation and Partnership Participations.**

43. Throughout the period when the Management Shareholders breached their fiduciary duties by failing to have any dividends declared from the earnings and operations of GPI, Robert was receiving equity interests and Partnership Participations (the "Participations"), which combined with his salary and bonus, provided him with total compensation which was exorbitant and unreasonably excessive.

44. The Management Shareholders, including Robert, caused such Participations and compensation to be granted to Robert in breach of their duty of due care, loyalty and good faith to GPI and to the Company.

45. The Management Shareholders, who had conspired together to freeze-out all nonmanagement shareholders from stock ownership and who, as part of such scheme, failed to declare any dividends from the operations and earnings of GPI, granted such total compensation and Participations to Robert, draining funds which should have been used for dividends, even though the bases for granting such Participations relied upon by other companies which offer

them, did not and do not exist with respect to Robert. He, inter alia, did not found GPI as a real estate development company; the Participations were not necessary to attract or retain him as an employee of GPI; he has not been required to invest or risk any actual capital in any of the GPI projects; and he has not assumed virtually any risks in connection with the GPI projects. Consequently, there was no reasonable basis for the granting of such excessive and exorbitant total compensation and Participations to Robert, which constituted a usurpation and diversion of corporate assets which should have been paid out as dividends.

46. GPI is entitled to have the Participations granted to Robert returned to it.

**COUNT I**

**(Direct Claim for Breach of Fiduciary Duties Against Management Shareholders and Gilbane)**

47. Richard repeats and realleges the allegations of paragraphs 1 through 46 as set forth in this Complaint.

48. The conduct of the Management Shareholders as set forth herein constitutes a breach of the fiduciary duties owed by the Management Shareholders to Richard, as well as to the other nonmanagement shareholders.

49. The conduct of Gilbane, as set forth herein, under the domination and control of the Management Shareholders, constitutes a breach of the fiduciary duties owed by Gilbane to Richard, as well as to the other nonmanagement shareholders.

50. Such breach of fiduciary duties has caused Richard substantial damages and entitles Richard to orders of the Court against the Management Shareholders, jointly and severally, and against Gilbane. Such damages and orders include, but are not limited to, judgment and orders for the payment of reasonable and appropriate dividends from the earnings

of the Gilbane Building Company and based on the earnings and operations of GPI, for the ten (10) years prior to this action being brought, and in the future.

## COUNT II

**(Derivative Claim Against the Management Shareholders With Respect to the Jean Gilbane Split Dollar Policy)**

51. Richard repeats and realleges the allegations of paragraphs 1 through 50 as set forth in this Complaint.

52. The conduct of the Management Shareholders with respect to the Jean Gilbane Split Dollar Policy and the proceeds therefrom constitutes a breach of the fiduciary duties owed by the Management Shareholders to Gilbane.

53. Gilbane has suffered substantial damages on account of such breach of fiduciary duties and is entitled to damages therefor against the Management Shareholders, jointly and severally, which damages should be placed in a constructive trust for use as a special dividend or distribution for the nonmanagement shareholders, plus costs and attorneys' fees.

## COUNT III

**(Derivative Claim for Usurpation of Corporate Opportunities With Respect to the Jean Gilbane Split Dollar Policy)**

54. Richard repeats and realleges the allegations of paragraphs 1 through 53 as set forth in this Complaint.

55. The conduct of the Management Shareholders with respect to the Jean Gilbane Split Dollar Policy and the proceeds therefrom, constitutes a usurpation of corporate opportunities by all of the Management Shareholders to further their illicit plans and schemes.

56. Gilbane has suffered substantial damages on account of such breach of fiduciary duties and is entitled to damages therefor, against the Management Shareholders, jointly and

severally, which damages should be placed in a constructive trust for use as a special dividend or distribution for the nonmanagement shareholders, plus costs and attorneys' fees.

**COUNT IV**

**(Derivative Claim Against Thomas and Robert Gilbane For Unjust Enrichment With Respect to the Jean Gilbane Split Dollar Policy)**

57. Richard repeats and realleges the allegations of paragraphs 1 through 56 as set forth in this Complaint.

58. As a result of the conduct set forth herein and the retention by Thomas and Robert of the death benefits from the Jean Gilbane Split Dollar Policy, Thomas and Robert have been unjustly enriched at the expense of Gilbane. Wherefore, Gilbane is entitled to recover as damages all amounts retained by them, plus interest, from the Jean Gilbane Split Dollar Policy, which damages should be placed in a constructive trust for use as a special dividend or distribution for the nonmanagement shareholders, plus costs and attorneys' fees.

**COUNT V**

**(Derivative Claim Against the Management Shareholders With Respect to the Total Compensation and Participations Granted to Robert V. Gilbane)**

59. Richard repeats and realleges the allegations of paragraphs 1 through 58 as set forth in this Complaint.

60. The conduct of the Management Shareholders with respect to the total compensation and Participations granted to Robert constitutes a breach of the fiduciary duties owed by the Management Shareholders to Gilbane and GPI.

61. Gilbane and GPI have suffered substantial damages on account of such breach of fiduciary duties and are entitled to damages therefor against the Management Shareholders,

jointly and severally, which damages should be placed in a constructive trust for use as a special dividend or distribution for the nonmanagement shareholders, plus costs and attorneys' fees.

**COUNT VI**

**(Derivative Claim for Usurpation of Corporate Opportunities With Respect to the Total Compensation and Participations Granted to Robert V. Gilbane)**

62. Richard repeats and realleges the allegations of paragraphs 1 through 61 as set forth in this Complaint.

63. The conduct of the Management Shareholders with respect to the total compensation and Participations granted to Robert constitutes a breach of fiduciary duties by all of the Management Shareholders to Gilbane and GPI and a usurpation of corporate opportunities by Robert.

64. Gilbane and GPI have suffered substantial damages on account of such breach of fiduciary duties and are entitled to damages therefor, against the Management Shareholders, jointly and severally, which damages should be placed in a constructive trust for use as a special dividend or distribution for the nonmanagement shareholders, plus costs and attorneys' fees.

**COUNT VII**

**(Derivative Claim Against Robert V. Gilbane For Unjust Enrichment With Respect to the Total Compensation and Participations Granted to Robert V. Gilbane)**

65. Richard repeats and realleges the allegations of paragraphs 1 through 64 as set forth in this Complaint.

66. As a result of the conduct set forth herein and the retention by Robert of the total compensation and Participations, Robert has been unjustly enriched at the expense of Gilbane and GPI. Wherefore, Gilbane and GPI are entitled to recover damages therefor, plus interest,

which damages should be placed in a constructive trust for use as a special dividend or distribution for the nonmanagement shareholders, plus costs and attorneys' fees.

WHEREFORE, plaintiff requests that this Court:

A. Enter judgment on behalf of plaintiff on each and every Count of the Complaint;

B. Enter judgment on behalf of plaintiff for lost past dividends;

C. Issue an order for reasonable and appropriate dividends to be paid in the future from the earnings and operations of Gilbane and GPI;

D. Issue an order for a constructive trust of the amounts obtained by Gilbane, Inc. under Counts II through VII, and for a special dividend or distribution of such amounts to nonmanagement shareholders;

E. Enter a judgment for the plaintiff for costs and attorneys' fees; and

F. Grant such other civil and equitable relief as this Court deems just and appropriate.

**Plaintiff hereby demands a trial by jury.**

Dated: February 7, 2005

RICHARD T. GILBANE
By his attorneys,

Matthew F. Medeiros, Esq. (# 1856)
**LITTLE MEDEIROS KINDER BULMAN & WHITNEY, P.C.**
72 Pine Street
Providence, Rhode Island 02903
Tel: (401) 272-8080
Fax: (401) 272-8195

*Of Counsel*:
Kenneth A. Sweder, BBO# 489840
Laurie M. Ruskin, BBO # 630374
**SWEDER & ROSS LLP**
21 Custom House Street, Suite 300
Boston, MA 02110
(617) 646-4466

F:\MFM\GILBANE\COMPLAINT.doc

**VERIFICATION**

I, Richard T. Gilbane, have read the foregoing Complaint and the same is true of my own knowledge except as to any matters stated therein to be on information and belief and as to those matters, I believe them to be true.

Executed at Providence, Rhode Island on this 4th day of February, 2005.

Richard T. Gilbane

Sworn to before me this
4th day of February, 2005

Veronica G Szeuc
Notary Public
My Commission Expires: 10/20/08