**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

***Executive Protection Portfolio*** SM
***General Terms and Conditions Section***

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws of Indiana, herein called the Company

Policy Number: 8169-1596

**THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN. "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization:** Gilbane, Inc.
Principal Address: 7 Jackson Walk Way
Providence, RI 02903

Item 2. **Policy Period:** From 12:01 A.M. on March 5, 2004
To 12:01 A.M. on June 30, 2005
Local time at the address shown in Item 1.

Item 3. Coverage Summary
Description:
GENERAL TERMS AND CONDITIONS
EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY

Item 4. Termination of
Prior Bonds or Policies: 8169-1596 (March 5, 2003 - March 5, 2004)

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

***Executive Protection Portfolio*** SM
***General Terms and Conditions Section***

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

Henry A Aulick

Secretary

Thomas F Motamed

President

03/25/04

Date

Robert Hamburger

Authorized Representative

**In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this policy, the Company and the Insureds agree as follows:**

---

***Territory***

1. Coverage shall extend anywhere in the world.

---

***Terms and Conditions***

2. Except for these General Terms and Conditions or unless stated to the contrary in any coverage section of this policy, the terms and conditions of each coverage section shall apply only to that coverage section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage section, the terms and conditions of such coverage section shall control for purposes of that coverage section. Any defined term referenced in these General Terms and Conditions but defined in a coverage section shall, for purposes of coverage under that coverage section, have the meaning set forth in that coverage section.

---

***Definitions***

3. When used in this policy:

   **Claim** shall have the meaning set forth in the applicable coverage section.

   **Insured** shall have the meaning set forth in the applicable coverage section.

   **Parent Organization** means the organization designated in Item 1 of the Declarations of these General Terms and Conditions.

   **Policy Period** means the period of time specified in Item 2 of the Declarations of these General Terms and Conditions, subject to prior termination in accordance with Subsection 11 below. If this period is less than or greater than one year, then the limits of liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period.

---

***Limits of Liability and Retentions***

4. Unless stated to the contrary in any coverage section, the limits of liability and retentions shown for each coverage section are separate limits of liability and separate retentions pertaining to the coverage section for which they are shown. Unless stated to the contrary in any coverage section of this policy, the payment of a retention under one coverage section shall not constitute payment of, and shall not reduce, the applicable retention under any other coverage section.

***Notice***

5. Any notice to the Company with respect to any coverage section shall designate the coverage section under which notice is being given and shall be treated as notice only under the coverage section(s) so designated.

   Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing addressed to:

   Attn: Claims Department
   Chubb Group of Insurance Companies
   82 Hopmeadow Street
   Simsbury, Connecticut 06070-7683

   All other notices to the Company shall be given in writing addressed to:

   Attn: Underwriting
   Chubb Group of Insurance Companies
   82 Hopmeadow Street
   Simsbury, Connecticut 06070-7683

   Any such notice shall be effective on the date of receipt by the Company at such address.

***Valuation and Foreign Currency***

6. All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if a judgment is rendered, a settlement is denominated or any element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of loss is due, respectively.

***Subrogation***

7. In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

***Action Against the Company***

8. No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or entity shall have any right under this policy to join the Company as a party to any action against any **Insured** to determine such **Insured**'s liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured.**

***Parent Organization Rights and Obligations***

9. By acceptance of this policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of loss (and the **Parent Organization** further agrees that it shall be responsible for application of any such payment as provided in this policy). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

***Alteration and Assignment***

10. No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

***Termination of Policy or Coverage Section***

11. This policy or any coverage section shall terminate at the earliest of the following times:

(a) sixty days after receipt by the **Parent Organization** of written notice of termination from the Company for any reason other than non-payment of premium;

(b) twenty days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

(c) upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this policy may not be terminated by the **Parent Organization** after the effective date of any acquisition of the **Parent Organization** as described in the Changes in Exposure subsection of the applicable coverage section of this policy;

(d) upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions; or

(e) at such other time as may be agreed upon by the Company and the **Parent Organization.**

The Company shall refund the unearned premium computed at customary short rates if this policy or any coverage section is terminated by the **Parent Organization.** Under any other

circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter.

---

***Termination of Prior Bonds or Policies***

12. Any bonds or policies issued by the Company or its affiliates and specified in Item 4 of the Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of the inception of this policy.

---

***Bankruptcy***

13. Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this policy.

---

***Headings***

14. The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

---

CHUBB

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement: March 5, 2004 Co Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8169-1596

Issued to: Gilbane, Inc.

---

**RHODE ISLAND AMENDATORY ENDORSEMENT
TO THE GENERAL TERMS AND CONDITIONS SECTION**

In consideration of the premium charged, it is agreed that:

1. Subsection 11. Termination of Policy or Coverage Section (a) of the General Terms and Conditions Section is amended by adding the following at the end of such paragraph (a):

"provided that:

(1) if this policy has been in effect for sixty (60) days or less and is not a renewal, the Company may cancel this policy for any reason upon thirty (30) days written notice of cancellation to the Parent Organization at its last known address, with a copy to the agent or broker of record, if any;

(2) if this policy has been in effect for more than sixty (60) days or is a renewal, the Company may cancel this policy, other than for non-payment of premium, for one or more of the following reasons:

(a) fraud or material misrepresentation made by or with the knowledge of the Parent Organization in obtaining this policy, continuing this policy, or in presenting a claim under this policy;

(b) activities or omissions on the part of the Parent Organization that increase any hazard insured against, including a failure to comply with loss control recommendations;

(c) change in the risk, which increases the risk of loss after this policy has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

(d) loss or decrease of the Company's reinsurance covering all or part of the risk or exposure covered by this policy;

(e) determination by the Commissioner of Insurance that the continuation of this policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of Rhode Island;

(f) owner or occupant incendiarism;

(g) violation or breach by the Parent Organization of any policy terms or conditions;

(h) constructive or actual total loss of the insured property; or

(i) such other reasons as may be approved by the Commissioner of Insurance."

2. Subsection 11. Termination of Policy or Coverage Section (d) of the General Terms and Conditions Section is amended by adding the following at the end of such paragraph (d):

"provided that non-renewal by the Company is effective only if the Company gives, mails or delivers at least thirty (30) days advance written notice to the Parent Organization, with a copy to the agent of record, if any, at their last addresses known to the Company; or"

3. Subsection 11. Termination of Policy or Coverage Section of the General Terms and Conditions Section is amended by adding the following at the end of such Subsection:

"In the event of cancellation of this policy by the Company, the Company will mail or deliver advance written notice of cancellation to the Parent Organization, at the last address known to the Company, with a copy to its agent of record, if any. If cancellation of this policy is effected on behalf of the Parent Organization by a premium finance company pursuant to the terms of a financing agreement containing a power of attorney, earned premium shall be computed pro-rata and not in accordance with the short-rate table.

In the event of non-renewal by the Company, if notice of non-renewal is given, mailed or delivered less than thirty (30) days before the policy expiration date, coverage will remain in effect until thirty (30) days after notice is given, mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be calculated pro-rata based upon the rates in effect for the previous Policy Period.

If the Company provides notice of non-renewal, and thereafter extends this policy for ninety (90) days or less, an additional notice of non-renewal shall not be required with respect to the extension.

The Company may condition renewal of this policy upon a premium increase, change in the deductible, or reduction in the Limit of Liability or coverage by delivering or mailing at least thirty (30) days advance written notice of such change(s) to the Parent Organization and forty-five (45) days advance written notice to the agent of record, if any. If the Company does not provide such notice within the designated time periods, the Parent Organization will have the option to extend the Policy Period until notice is given or until the effective date of replacement coverage is obtained by the Parent Organization, whichever occurs first. If the Parent Organization elects not to renew this policy, any earned premium for the extension period of the terminated policy will be calculated on a pro-rata basis at the lower of the current or prior year's premium. If the Parent Organization accepts the renewal, the premium increase, if any, and other changes will be effective the day following the expiring policy's expiration or anniversary date.

No notice of non-renewal or conditional renewal is required if due to:

(1) changes in rate or plan filed with and approved by the Rhode Island Commissioner of Insurance and applicable to an entire class of business;

CHUBB

(2) changes based upon the altered nature or extent of the risk insured; or

(3) changes in the policy forms filed with or approved by the Rhode Island Commissioner of Insurance and applicable to an entire class of business.

Proof of the giving, mailing or delivering of notice of cancellation, non-renewal or of premium or coverage changes, as set forth in this Subsection 11. of these General Terms and Conditions, to the Parent Organization at the address last known to the Company, will be sufficient proof of notice."

The policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Rhode Island.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative

CHUBB

# Schedule of Forms

To be attached to and form part of
Policy No. 8169-1596

Company: Federal Insurance Company

Issued to: Gilbane, Inc.

Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)
14-02-7587 (11/02 ed.)

Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)
14-02-8612 (10/03 ed.)

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

***Executive Protection Portfolio*** SM
***Executive Liability and Entity Securities Liability Coverage Section***

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws of Indiana, herein called the Company

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization:**
Gilbane, Inc.
7 Jackson Walk Way
Providence, RI 02903

Item 2. Limits of Liability:

| | |
|---|---|
| (A) Each **Claim**: | $5,000,000.00 |
| (B) Each **Policy Period**: | $5,000,000.00 |
| (C) Sublimit for all **Securityholder Derivative Demands** under Insuring Clause 4: | $5,000,000.00 |

Item 3. Coinsurance Percentage:

| | |
|---|---|
| (A) **Securities Claims**: | 0.00% |
| (B) **Claims** other than **Securities Claims**: | 0.00% |

Item 4. Retention:

| | |
|---|---|
| (A) Insuring Clauses 1 and 4: | None |
| (B) Insuring Clause 2 (**Claims** other than **Securities Claims**): | $100,000.00 |
| (C) Insuring Clauses 2 and 3 (**Securities Claims** only): | $100,000.00 |

Item 5. **Organization:**

Gilbane, Inc.

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

***Executive Protection Portfolio*** [SM]
***Executive Liability and Entity Securities Liability Coverage Section***

Item 6. Extended Reporting Period:

| | |
|---|---|
| (A) Additional Period: | One-Year |
| (B) Additional Premium: | 200 % of Annualized Premium for the Expiring **Policy Period** |

Item 7. Pending or Prior Date: March 05, 2002

**In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:**

---

***Insuring Clauses***

*Executive Liability Coverage Insuring Clause 1*

1. The Company shall pay, on behalf of each of the **Insured Persons**, **Loss** for which the **Insured Person** is not indemnified by the **Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

---

*Executive Indemnification Coverage Insuring Clause 2*

2. The Company shall pay, on behalf of the **Organization, Loss** for which the **Organization** grants indemnification to an **Insured Person,** as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person,** individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

---

*Entity Securities Coverage Insuring Clause 3*

3. The Company shall pay, on behalf of the **Organization, Loss** which the **Organization** becomes legally obligated to pay on account of any **Securities Claim** first made against the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but only if such **Securities Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

---

*Securityholder Derivative Demand Coverage Insuring Clause 4*

4. The Company shall pay, on behalf of the **Organization**, **Investigative Costs** resulting from a **Securityholder Derivative Demand** first received by the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted before or during the **Policy Period**, but only if such **Securityholder Derivative Demand** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

---

***Definitions***

5. When used in this coverage section:

**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement.

**Application** shall also include, for each **Organization**, all of the following documents whether or not submitted with or attached to any such signed application: (i) the Annual Report (including financial statements) last issued to shareholders before this policy's inception date; (ii) the report last filed with the Securities and Exchange Commission on Form 10-K before this policy's inception date; (iii) the report last filed with the Securities and Exchange Commission on Form 10-Q before this policy's inception date; (iv) the proxy statement and (if different) definitive proxy statement last filed with the Securities and Exchange Commission before this policy's inception date; (v) all reports filed with the Securities and Exchange Commission on Form 8-K during the twelve months preceding this policy's inception date; and (vi) all reports filed with the Securities and Exchange Commission on Schedule 13D, with respect to any equity securities of such **Organization**, during the twelve months preceding this policy's inception date. All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section.

**Claim** means:

(1) when used in reference to the coverage provided by Insuring Clause 1 or 2:

(a) a written demand for monetary damages or non-monetary relief;

(b) a civil proceeding commenced by the service of a complaint or similar pleading; or

(c) a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(2) when used in reference to the coverage provided by Insuring Clause 3:

(a) a written demand for monetary damages or non-monetary relief;

(b) a civil proceeding commenced by the service of a complaint or similar pleading; or

(c) a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

(3) when used in reference to the coverage provided by Insuring Clause 4, a **Securityholder Derivative Demand**.

Except as may otherwise be provided in Subsection 12, Subsection 13(g),or Subsection 15(b) of this coverage section, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand, including but not limited to any **Securityholder Derivative Demand**, when such demand is first received by an **Insured**).

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

**Financial Impairment** means the status of an **Organization** resulting from:

(a) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(b) such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Insured** means the **Organization** and any **Insured Person**.

**Insured Capacity** means the position or capacity of an **Insured Person** that causes him or her to meet the definition of **Insured Person** set forth in this coverage section. **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization.

**Insured Person** means any natural person who was, now is or shall become:

(a) a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America;

(b) a holder of a position equivalent to any position described in (a) above in an **Organization** that is chartered in any jurisdiction other than the United States of America; or

(c) solely with respect to **Securities Claims**, any other employee of an **Organization**, provided that such other employees shall not, solely by reason of their status as employees, be **Insured Persons** for purposes of Exclusion 6(c).

**Investigative Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of the **Organization**) incurred by the **Organization** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Organization** whether it is in the

best interest of the **Organization** to prosecute the claims alleged in a **Securityholder Derivative Demand**.

**Loss** means:

(a) the amount that any **Insured Person** (for purposes of Insuring Clauses 1 and 2) or the **Organization** (for purposes of Insuring Clause 3) becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages, if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**; or

(b) for purposes of Insuring Clause 4, covered **Investigative Costs**.

**Loss** does not include:

(a) any amount not indemnified by the **Organization** for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

(b) any costs incurred by the **Organization** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) any amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that is not then a **Claim** even if (i) such amount also benefits the defense of a covered **Claim**, or (ii) such action, proceeding or demand subsequently gives rise to a **Claim**;

(d) taxes, fines or penalties, or the multiple portion of any multiplied damage award, except as provided above with respect to punitive or exemplary damages;

(e) any amount not insurable under the law pursuant to which this coverage section is construed, except as provided above with respect to punitive or exemplary damages;

(f) any amount allocated to non-covered loss pursuant to Subsection 17 of this coverage section; or

(g) any amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets.

**Manager** means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of an **Organization** that is a limited liability company.

**Organization** means, collectively, those organizations designated in Item 5 of the Declarations for this coverage section, including any such organization in its capacity as a

debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

**Pollutants** means (a) any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof, including, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, or (b) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products or any noise.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Securities Claim** means that portion of a **Claim** which:

(a) is brought by a securityholder of an **Organization**

(i) in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

(ii) derivatively, on behalf of such **Organization**, against an **Insured Person** of such **Organization**; or

(b) alleges that an **Organization** or any of its **Insured Persons**

(i) violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

(ii) committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**,

provided that **Securities Claim** does not include any **Claim** by or on behalf of a former, current, future or prospective employee of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such employee in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; and provided, further, that **Securities Claim** does not include any **Securityholder Derivative Demand.**

**Securityholder Derivative Demand** means:

(a) any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**; or

(b) any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Insured Person** for a **Wrongful Act** without first making a demand as described in (a) above,

provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person.**

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors or **Managers** of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Act** means:

(a) any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Insured Capacity**, or for purposes of coverage under Insuring Clause 3, by the **Organization**, or

(b) any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**.

---

***Exclusions***

*Applicable To All Insuring Clauses*

6. The Company shall not be liable for **Loss** on account of any **Claim**:

(a) based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice given under any policy or coverage section of which this coverage section is a direct or indirect renewal or replacement;

(b) based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(c) brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to:

(i) a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**;

(ii) an employment **Claim** brought or maintained by or on behalf of an **Insured Person**;

(iii) a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this coverage section; or

(iv) a **Claim** brought by an **Insured Person** who has not served in an **Insured Capacity** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, the **Organization** or any other **Insured**

**Person** who is serving or has served in an **Insured Capacity** within such four (4) year period;

(d) based upon, arising from, or in consequence of:

(i) any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

(ii) any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to the **Organization**, its securityholders or its creditors based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d);

(e) for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to mental anguish or emotional distress for which a claimant seeks compensation in an employment **Claim**;

(f) for an actual or alleged violation of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974, or any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(g) for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**, even if the **Insured Person's** service in such capacity is with the knowledge or consent or at the request of the **Organization**; or

(h) made against a **Subsidiary** or an **Insured Person** of such **Subsidiary** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted during any time when such entity was not a **Subsidiary**.

*Applicable To Insuring Clauses 1 and 2 Only*

7. The **Company** shall not be liable under Insuring Clause 1 or 2 for **Loss** on account of any **Claim** made against any **Insured Person**:

(a) for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world; or

(b) based upon, arising from, or in consequence of:

(i) the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**; or

(ii) such **Insured Person** having gained in fact any profit, remuneration or advantage to which such **Insured Person** was not legally entitled,

as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding.

---

*Applicable To Insuring Clause 3 Only*

8. The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Securities Claim** made against any **Organization**:

(a) based upon, arising from, or in consequence of:

(i) the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by an **Organization** or by any past, present or future chief financial officer, in-house general counsel, president, chief executive officer or chairperson of an **Organization**; or

(ii) such **Organization** having gained in fact any profit, remuneration or advantage to which such **Organization** was not legally entitled,

as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding; or

(b) for any actual or alleged liability of an **Organization** under any contract or agreement that relates to the purchase, sale, or offer to purchase or sell any securities; provided that this Exclusion 8(b) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement.

---

***Severability of Exclusions***

9. (a) No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of applying the exclusions in Subsection 7 of this coverage section.

(b) Only facts pertaining to and knowledge possessed by any past, present, or future chief financial officer, in-house general counsel, president, chief executive officer or chairperson of an **Organization** shall be imputed to such **Organization** for the purpose of applying the exclusions in Subsection 8 of this coverage section.

---

***Spouses, Estates and Legal Representatives***

10. Subject otherwise to the General Terms and Conditions and the limitations, conditions, provisions and other terms of this coverage section, coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:

(a) the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is incompetent, insolvent or bankrupt; or

(b) the lawful spouse or **Domestic Partner** of such **Insured Person** solely by reason of such spouse or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

All terms and conditions of this coverage section, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Persons**, shall also apply to loss incurred by the estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of such **Insured Persons**. The coverage provided by this Subsection 10 shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

***Coordination With Employment Practices Liability Coverage Section***

11. Any **Loss** otherwise covered by both (i) this coverage section and (ii) any employment practices liability coverage section or policy issued by the Company or by any affiliate of the Company (an "Employment Practices Liability Coverage") first shall be covered as provided in, and shall be subject to the limit of liability, retention and coinsurance percentage applicable to such Employment Practices Liability Coverage. Any remaining **Loss** otherwise covered by this coverage section which is not paid under such Employment Practices Liability Coverage shall be covered as provided in, and shall be subject to the Limit of Liability, Retention and Coinsurance Percentage applicable to this coverage section; provided the Retention applicable to such **Loss** under this coverage section shall be reduced by the amount of **Loss** otherwise covered by this coverage section which is paid by the **Insureds** as the retention under such Employment Practices Liability Coverage.

***Extended Reporting Period***

12. If the Company or the **Parent Organization** terminates or does not renew this coverage section, other than termination by the Company for nonpayment of premium, the **Parent Organization** and the **Insured Persons** shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for **Claims** that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or nonrenewal, and (ii) reported to the Company in writing within the time provided in Subsection 15(a) of this coverage section, but only to the extent such **Claims** are for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation or acquisition event described in Subsection 21 below. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew. The right to purchase an extension of coverage as described in this Subsection shall lapse unless written notice of election to purchase the extension, together with payment of the additional premium due, is received by the Company within thirty (30) days after the effective date of termination or nonrenewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

***Limit of Liability, Retention and Coinsurance***

13. (a) The Company's maximum liability for all **Loss** on account of each **Claim**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability set forth in Item 2(A) of the Declarations for this coverage section. The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the **Policy Period**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each **Policy Period** set forth in Item 2(B) of the Declarations for this coverage section.

(b) The Company's maximum aggregate liability under Insuring Clause 4 for all **Investigative Costs** on account of all **Securityholder Derivative Demands** shall be the Sublimit set forth in Item 2(C) of the Declarations for this coverage section. Such Sublimit is part of, and not in addition to, the Limits of Liability set forth in Items 2(A) and 2(B) of the Declarations.

(c) **Defense Costs** are part of, and not in addition to, the Limits of Liability set forth in Item 2 of the Declarations for this coverage section, and the payment by the Company of **Defense Costs** shall reduce and may exhaust such applicable Limits of Liability.

(d) The Company's liability under Insuring Clause 2 or 3 shall apply only to that part of covered **Loss** (as determined by any applicable provision in Subsection 17 of this coverage section) on account of each **Claim** which is excess of the applicable Retention set forth in Item 4 of the Declarations for this coverage section. Such Retention shall be depleted only by **Loss** otherwise covered under this coverage section and shall be borne by the **Insureds** uninsured and at their own risk. Except as otherwise provided in Subsection 14, no Retention shall apply to any **Loss** under Insuring Clause 1 or 4.

(e) If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(f) To the extent that **Loss** resulting from a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(a) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(A) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**. To the extent that **Loss** resulting from a **Claim** other than a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(b) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(B) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**.

(g) All **Related Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made, or on the date the earliest of such **Related Claims** is treated as having been made in accordance with Subsection 15(b) below, regardless of whether such date is before or during the **Policy Period**.

(h) The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the immediately preceding **Policy Period**.

***Presumptive Indemnification***

14. If the **Organization** fails or refuses, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss**, or to advance **Defense Costs** on behalf of an **Insured Person**, to the fullest extent permitted by statutory or common law, then, notwithstanding any other conditions, provisions or terms of this coverage section to the contrary, any payment by the Company of such **Defense Costs** or other **Loss** shall be subject to:

(i) the applicable Insuring Clause 2 Retention set forth in Item 4 of the Declarations for this coverage section; and

(ii) the applicable Coinsurance Percentage set forth in Item 3 of the Declarations for this coverage section.

***Reporting and Notice***

15. (a) The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company written notice of any **Claim** as soon as practicable, but in no event later than the earliest of the following dates:

(i) sixty (60) days after the date on which any **Organization's** chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Claim** has been made;

(ii) if this coverage section expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii) the expiration date of the Extended Reporting Period, if purchased;

provided that if the Company sends written notice to the **Parent Organization**, at any time before the date set forth in (i) above with respect to any **Claim**, stating that this coverage section is being terminated for nonpayment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(b) If during the **Policy Period** an **Insured**:

(i) becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company;

(ii) receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company; or

(iii) gives written notice to the Company of a **Securityholder Derivative Demand**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, or from the **Securityholder Derivative Demand** referred to in (iii) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii) or (iii) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a) above. With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(c) The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company such information, assistance, and cooperation as the Company may reasonably require, and shall include in any notice under Subsection 15(a) or (b) a description of the **Claim**, circumstances, or **Securityholder Derivative Demand**, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances, or **Securityholder Derivative Demand.**

---

***Defense and Settlement***

16. (a) It shall be the duty of the **Insureds** and not the duty of the Company to defend **Claims** made against the **Insureds.**

(b) The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent. The Company shall not be liable for any element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent. Provided the **Insureds** comply with Subsections 16(c) and (d) below, the Company shall not unreasonably withhold any such consent.

(c) With respect to any **Claim** that appears reasonably likely to be covered in whole or in part under this coverage section, the Company shall have the right and shall be given the opportunity to effectively associate with the **Insureds**, and shall be consulted in advance by the **Insureds**, regarding the investigation, defense and settlement of such **Claim**, including but not limited to selecting appropriate defense counsel and negotiating any settlement.

(d) The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

(e) Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section.

---

***Allocation***

17. (a) If in any **Securities Claim** the **Insureds** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss as follows:

    (i) The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 2 shall be allocated in its entirety to covered **Loss**, subject, however, to the applicable Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively; and

    (ii) The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 1 or 3 shall be allocated between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Securities Claim**, based also on the relative benefits to the **Insureds** from settlement of the covered matters and from settlement of the non-covered matters; provided that the amount so allocated to covered **Loss** under Insuring Clause 3 shall be subject to the Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively.

    The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss. The allocation described in (i) above shall be final and binding on the Company and the **Insureds** under Insuring Clause 2, but shall not apply to any allocation under Insuring Clauses 1 and 3.

(b) If in any **Claim** other than a **Securities Claim** the **Insured Persons** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insured Persons** and others (including the **Organization**), the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement. The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss.

(c) If the **Insureds** and the Company agree on an allocation of **Defense Costs**, the Company shall advance on a current basis **Defense Costs** allocated to the covered **Loss**. If the **Insureds** and the Company cannot agree on an allocation:

    (i) no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

    (ii) the Company shall advance on a current basis **Defense Costs** which the Company believes to be covered under this coverage section until a different allocation is negotiated, arbitrated or judicially determined; and

    (iii) the Company, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

(d) Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** on account of a **Claim** shall be applied retroactively to all **Defense Costs** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

***Other Insurance***

18. If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Any payment by **Insureds** of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

***Payment of Loss***

19. In the event payment of **Loss** is due under this coverage section but the amount of such **Loss** in the aggregate exceeds the remaining available Limit of Liability for this coverage section, the Company shall:

(a) first pay such **Loss** for which coverage is provided under Insuring Clause 1 of this coverage section; then

(b) to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such **Loss** for which coverage is provided under any other Insuring Clause of this coverage section.

Except as otherwise provided in this Subsection 19, the Company may pay covered **Loss** as it becomes due under this coverage section without regard to the potential for other future payment obligations under this coverage section.

***Changes in Exposure***

Acquisition /Creation of Another Organization

20. If before or during the **Policy Period** any **Organization**:

(a) acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(b) acquires another organization by merger into or consolidation with an **Organization** such that the **Organization** is the surviving entity,

such other organization and its **Insured Persons** shall be **Insureds** under this coverage section, but only with respect to **Wrongful Acts** committed, attempted, or allegedly committed or attempted after such acquisition or creation unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insureds** before such acquisition or creation.

If the total assets of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

*Acquisition by Another Organization*

21. If:

(a) the **Parent Organization** merges into or consolidates with another organization and the **Parent Organization** is not the surviving entity; or

(b) another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or **Managers** of the **Parent Organization**,

coverage under this coverage section shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Upon the occurrence of any event described in (a) or (b) of this Subsection 21, the entire premium for this coverage section shall be deemed fully earned.
The **Parent Organization** shall give written notice of such merger, consolidation or acquisition to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such merger, consolidation or acquisition, together with such other information as the Company may require. Upon receipt of such notice and information and at the request of the **Parent Organization**, the Company shall provide to the **Parent Organization** a quotation for an extension of coverage (for such period as may be negotiated between the Company and the **Parent Organization**) with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Any coverage extension pursuant to such quotation shall be subject to such additional or different terms, conditions and limitations of coverage, and payment of such additional premium, as the Company in its sole discretion may require.

---

*Cessation of Subsidiary*

22. In the event an organization ceases to be a **Subsidiary** before or during the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted while such organization was a **Subsidiary.**

---

*Related Entity Public Offering*

23. If any **Organization** files or causes to be filed, with the United States Securities and Exchange Commission or an equivalent agency or government department in any country other than the United States of America, any registration statement in contemplation of a public offering of equity securities by any entity other than the **Parent Organization** (irrespective of whether such public offering is an initial public offering or a secondary or other offering subsequent to an initial public offering), then the Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or in consequence of such registration statement or the sale, offer to sell, distribution or issuance of any securities pursuant to such registration statement, unless (i) the Company receives written notice at least thirty (30) days prior to the effective date of such registration statement providing full details of the contemplated offering, and (ii) the Company, in its sole discretion, agrees by written endorsement to this coverage section to provide coverage for such **Claims** upon such terms and conditions, subject to such limitations and other provisions, and for such additional premium as the Company may require. If the Company in its sole discretion agrees to provide coverage for such **Claims**, the additional premium specified by the Company shall be payable to the Company in full not later than the date on which such registration statement becomes effective.

---

*Representations and Severability*

24. In issuing this coverage section the Company has relied upon the statements, representations and information in the **Application**. All of the **Insureds** acknowledge and agree that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the Company to issue this coverage section, and (iii) are material to the Company's acceptance of the risk to which this coverage section applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed, and (ii) the **Organization** under Insuring Clause 2 to the extent it indemnifies an **Insured Person** who had such actual or imputed knowledge. For purposes of the preceding sentence:

(a) the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**;

(b) the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all of the **Insureds**; and

(c) except as provided in (a) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.

CHUBB

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: March 5, 2004

Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8169-1596

Issued to: Gilbane, Inc.

SECURITIES ACT AND PUBLIC OFFERINGS EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1) Item 7 of the Declarations for this coverage section is amended to read in its entirety as follows:

"Item 7. Pending or Prior Date:

(A) Insuring Clauses 1, 2 and 4: March 05, 2002

(B) Insuring Clause 3: March 05, 2002"

(2) The definition of "**Securities Claim**" in Subsection 5 of this coverage section is amended to read in its entirety as follows:

"**Securities Claim** means that portion of a **Claim** which:

(a) is brought by a securityholder of an **Organization**

(i) in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

(ii) derivatively, on behalf of such **Organization**, against an **Insured Person** of such **Organization**; or

(b) alleges that an **Organization** or any of its **Insured Persons**

(i) violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

(ii) committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**.

**Securities Claim** does not include:

(a) any **Claim** based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder;

(b) any **Claim** by or on behalf of a former, current, future or prospective employee of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, by the **Organization** to such employee in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount of value of which is derived from the value of securities of the **Organization**; or

(c) any **Securityholder Derivative Demand.**"

(3) The Company shall not be liable under this coverage section for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder.

(4) Paragraph (b) of Subsection 6 of this coverage section is amended by replacing the phrase "on or prior to the Pending or Prior Date" with the phrase "on or prior to the applicable Pending or Prior Date".

(5) Subsection 23. Related Entity Public Offering of this coverage section is amended to read in its entirety as follows:

"***Certain Securities Offerings***

23. If any **Organization** files or causes to be filed, with the United States Securities and Exchange Commission or an equivalent agency or government department in any country other than the United States of America, any registration statement in contemplation of a public offering of equity securities by an **Organization** (irrespective of whether such public offering is an initial public offering or a secondary or other offering subsequent to an initial public offering), then the Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or in consequence of such registration statement or the sale, offer to sell, distribution or issuance of any securities pursuant to such registration statement, unless (i) the Company receives written notice at least thirty (30) days prior to the effective date of such registration statement providing full details of the contemplated offering, and (ii) the Company, in its sole discretion, agrees by written endorsement to this coverage section to provide coverage for such **Claims** upon such terms and conditions, subject to such limitations and other provisions, and for such additional premium as the Company may require. If the Company in its sole discretion agrees to provide coverage for such **Claims**, the additional premium specified by the Company shall be payable to the Company in full not later than the date on which such registration statement becomes effective."

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

CHUBB

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative

CHUBB

**Executive Protection Portfolio**

PREMIUM BILL

Insured: Gilbane, Inc.

Date: 03/25/2004

Producer: AON RISK SERVICES, INC. OF RHODE ISLAND
50 KENNEDY PLAZA, FL. 10
PROVIDENCE, RI 029032393

Company: Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number: 8169-1596

Policy Period: March 5, 2004 to June 30, 2005

NOTE: - PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE.

| COVERAGE | PREMIUM |
|---|---|
| EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY | $65,697.00 |

| | |
|---|---|
| | |
| TOTAL | $65,697.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

CHUBB

Chubb & Son, div. of Federal Insurance Company
as manager of the member insurers of the
Chubb Group of Insurance Companies

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

**(for policies with no terrorism exclusion or sublimit)**

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, this policy makes available to you insurance for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-**.

If you have any questions about this notice, please contact your agent or broker.